## CHESS et al. v. GRANT.

(Circuit Court of Appeals, Fourth Circuit. July 30, 1908.)

### No. 799.

1. TRIAL—ADMISSION OF EVIDENCE.

Where a paper is offered in evidence to the jury, and a general objection is made to its being read, which is overruled, an appellate court will not hold such ruling to be error if the paper could properly be read as evidence for any purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 226.]

2. EJECTMENT—EVIDENCE.

In an action of ejectment, the record in a prior suit against the defendant to condemn right of way for a road over the property in controversy is admissible in evidence to prove possession under claim of title by defendant, where such fact is pertinent to the issues, although plaintiff was not a party to such suit.

3. SAME—INSTRUCTIONS.

Instructions given in an action of ejectment considered, and, construed together, *held* to correctly state the law applicable to the case.

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Clarksburg.

John Bassel and George M. Hoffheimer, for plaintiffs in error.

John W. Davis (Davis & Davis and Roy E. Guy, on the briefs), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

PRITCHARD, Circuit Judge. This is an action of ejectment instituted in the Circuit Court of the United States for the Northern District of West Virginia, at Clarksburg, by the plaintiffs in error, together with their late brother, Walter Chess, now deceased, against the defendant in error, Edward M. Grant, for the recovery of a tract of land lying on Cheat river, in Monongalia county, W. Va., in the possession of the defendant in error.

The declaration demands a tract of 273 acres described by the metes and bounds of what is known as the "Ramsey & Shaw Patent," as to all of which, except a tract of 10 acres, more or less, defendant in error disclaimed, and as to said 10 acres he pleaded not guilty. There was a jury trial, resulting in a verdict for the defendant in error on which the court below rendered judgment after overruling the motion of plaintiffs in error to set aside the verdict and grant a new trial.

We have examined the record in this case with great care, both as to the assignments of error relating to the instructions given by the court as requested by the defendant in error, as well as the one relating to the admissibility of certain testimony offered by the defendant

in error below. We are unable to discover any new or novel question from an examination of the record. This being a suit in ejectment, the main question is as to the location of the land claimed by the plaintiffs in error which necessarily involves the true location of certain lines described in the conveyances offered in evidence by the plaintiffs below.

As to the assignment of error which relates to the admissibility of certain court records in a proceeding wherein an order was entered by the county court of Monongalia county, on the 9th day of September, 1898, establishing a road across the land in controversy, this order was introduced in connection with the direct examination of the defendant's witness William Bayles. This order shows that the land proposed to be taken belonged to the witness Bayles, and the plaintiffs in error objected to the introduction of the same upon the ground that it was inadmissible, in that it constituted an adjudication of another court in a proceeding to which the plaintiffs in error were not parties. In referring to this matter, counsel for plaintiffs in error insist that:

"In the case at bar the order of the county court could not but have impressed the jury as a recognition, if not an express adjudication by a tribunal of the community in which the land is situated that William Bayles, defendant in error's grantor, was the owner of the land, and that the plaintiffs in error had no right thereto."

The stenographer's report is silent as to the discussion which occurred at the time this order was offered as evidence, but it is insisted by counsel for the defendant in error that the court at the time of its introduction expressly stated to the jury that the order had and could have no effect as an adjudication of the rights of the parties in the controversy which they were called upon to determine. This contention is denied by the plaintiffs in error, and we are necessarily restricted to the record as to what transpired in the court below.

The defendant in error insists that this order was properly admitted as testimony, and assigns three distinct grounds to support such contention, as follows:

"(a) To prove an act of ownership on the part of William Bayles:

"William Bayles was the grantor of the defendant and the owner of all that part of the James Moore survey bounded by the lines here in dispute. He testified that he and his grantors had always claimed to the river, and that his southern boundary line had always run from the white oak at B to the point of rocks at C, and that he had resided on this tract of land over 65 years, claiming it all under the color of title evidenced by his deed. Many acts of ownership on his part were shown, which it is not necessary at this stage to recapitulate. Not the least distinct of these acts was the transaction shown by this order when, asserting himself to be the owner of the land, he made formal waiver of any objection to the making of this road and accepted a sum certain for compensation for the building of the fence around the same. The northwest side of this road forms the boundary line of the land sold to the defendant Grant, and when it was established, with the possible exception of a very few feet at the junction of the road and river southeast of the point C shown on the map, every foot of the road was built on land which William Bayles had owned and occupied for over 65 years. Certainly this was an important and material fact to be proven.

"(b) To negative an act of ownership on the part of the plaintiffs in error:

"In the examination of the plaintiffs' witness Marshall Dunn, he was asked by counsel this question:

" 'Q. Do you recollect of any wire fence or barrier being placed there on or about that time by any one representing the company for the purpose of keeping Grant out? A. No, sir; but I do know of wire being sent there to build a fence and being carried off in the night some time.

" 'Q. The wire was destroyed? A. Yes, sir.

" 'Q. Who sent it there? A. Keffer.

" 'Q. Who was he? A. Manager or superintendent of the iron company.'

"The purpose of these questions, of course, was to create in the minds of the jury the impression that the plaintiffs in error, or their grantors, had distinctly asserted their title in hostility to the defendant Grant.

"On the cross-examination of the witness Marshall Dunn, it was disclosed that at or about the time of the establishment of this road, a man named Voight undertook to operate a ferry across Cheat river from its terminus in competition with the ferry lower down the river operated by the plaintiffs in error. This same incident was referred to in the examination in chief of the defendant's witness William Bayles:

" 'Q. I will get you to state what was the first time that Keffer to your knowledge claimed any ownership over that property for the Chess Company? A. We was building the road there the first time I remember.

" 'Q. Do you recall in what year that road was built? A. Must be '90 to '91, or '2, along there.

" 'Q. Did the Chess Company or their agents at the time that road was being built attempt to block it? A. Dawson put out notices.

" 'Q. On the road? A. Yes, sir.

" 'Q. Did they put any barbed wire on that road? A. They said they did. I was not there.

" 'Q. Did you hear some had been placed there? A. Yes.

" 'Q. I will get you to state if your reason for making the special warranty deed, instead of a general warranty deed was because that wire had been placed by that road? A. Yes, in part.

" 'Q. Do you recall in what year the road running from Ice's Ferry road down to the Mt. Chateau Ferry was constructed? A. I do not know just exactly the year, but it must have been somewhere along in '90, '91, along there.

" 'Q. Do you mean 1900? A. 1890 or 1891.

" 'Q. You don't recall just when that was built? A. No, sir.'

"This order, when introduced, therefore revealed two things: (1) That the road was established on the 9th day of September, 1898, and that this incident therefore occurred prior to the acquisition of title by the defendant, Grant; his deed having been made on the 3d day of October, 1900. And (2) that one purpose of the establishment of the road was the operation of a ferry in competition with the plaintiff's ferry and at one-half the rates.

"When, in connection with these facts, it is considered that Grant's deed runs only to the northwest line of this road, and that, as shown by the plat, its terminus perhaps lies east of the line from the White Oak stump to the point of rock—B to C—and therefore on land not claimed by Bayles, it is easy to see that the incident was not an act of ownership on the part of the plaintiffs, nor an assertion of title hostile to the defendant, but a mere effort on their part to annoy and harrass a business rival.

"(c) The order was admissible, in the third place, to fix the date of the establishment of this road and the incidents connected therewith, as to which the recollection of both the witnesses Marshall Dunn and William Bayles were admittedly at fault."

While, as we have said, there is nothing in the record to show that the presiding judge instructed the jury that this evidence could have no effect in determining the controversy as an adjudication of the defendant's rights, yet it does appear that the objection to the introduction of this order was general in its terms; and, such being the case, it is subject to the rule, as contended by the defendant in error, that the court will not hold an adverse ruling on such a paper to be error,.

if it appears from the evidence that it could be read for any purpose. The rule in this respect is that:

"Where a paper is offered in evidence to the jury, and a general objection is made to its being read, and the objection is overruled, this court will not hold such a ruling to be error if such paper could be properly read as evidence for any purpose." Stansbury v. Stansbury's Administrators, 20 W. Va. 23; Cobb v. Dunlevie (W. Va.) 60 S. E. 384.

It is clear to us that it was competent to prove an act of ownership on the part of William Bayles, the grantor of the defendant in error, as well as to negative an act of ownership on the part of the plaintiffs in error. It appears from the evidence that the witnesses Dunn and Bayles were unable to recollect definitely as to the establishment of this road and the incidents connected therewith. When this evidence is considered as a whole, we think it was clearly competent as such for the purposes hereinbefore mentioned, and we are of opinion that the ruling of the lower court in admitting the same was not error. At most, if error at all, it was harmless error and is not sufficient to justify us in disturbing the verdict of the jury.

As to the third assignment of error, it is insisted that the same is based upon a false assumption as to the location of the corner of the Moore tract at C on the plat. The question as to whether C is or is not a corner was submitted to the jury in the preceeding instruction No. 6. It is well settled that:

"If all the instructions considered together are harmonious and consistent and cover all the material issues involved in the case, then the charge is sufficient, notwithstanding a single instruction standing alone may not correctly or fully state the law."

For example, where an instruction as to the burden of proof is obscure, the error is immaterial where others given on the same subject clearly state the law.

The learned judge who tried this case submitted a number of instructions to the jury embodying every phase of the questions presented by the evidence clearly and intelligently, and, under the circumstances, when we consider these instructions as a whole in the light of the evidence, we fail to find any reason for reversing the ruling of the court in this respect.

This being a suit in ejectment, as hereinbefore stated, it necessarily involves questions of law relating to the rules governing a jury in ascertaining the true location of boundary lines. We have carefully considered each of the instructions submitted to the jury bearing upon this point and are of opinion that they are in strict harmony with the rule in such cases. The law in this respect is so well defined that we deem it a work of supererogation to undertake to write an elaborate opinion in regard to questions that are well settled in this branch of the law.

For the reasons herein stated, the judgment of the Circuit Court is affirmed.

Affirmed.