### In re GOODRICH.

(Circuit Court of Appeals, First Circuit. December 2, 1910.)

No. 884 (original).

1. BANKRUPTCY (§ 229*)—PROCEEDINGS FOR CONTEMPT—PLEADING.

In proceedings for contempt before a court of bankruptcy, the pleadings pro and con may be of a summary character, yet while perhaps no pleading on the part of the respondent is necessary, it is often advantageous to set out the defense in a definite manner with a view of bringing the issues clearly before the appellate tribunal.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 229.*]

2. BANKRUPTCY (§ 229*)—PROCEEDINGS FOR CONTEMPT—EVIDENCE.

In proceedings against a bankrupt for contempt for refusal to comply with an order of the referee, whether, and the extent to which, the court will consider the prior proceedings in the bankruptcy matter, rests largely in its discretion, provided only that it gives the parties concerned notice of what it regards as evidence.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 229.*]

3. BANKRUPTCY (§ 229*)—PROCEEDINGS FOR CONTEMPT—EVIDENCE.

In proceedings against a bankrupt for contempt for failure to obey an order of the referee, such order and whatever occurred before the referee may be referred to as having some weight pro and con, but the court should receive all material evidence relating to what preceded as well as what followed the referee's report, although it may show that the order was not justified.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 229.*]

Petition for Revision of Proceedings of the District Court of the United States for the District of Massachusetts.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of William H. Goodrich, bankrupt. On petition by the bankrupt to revise an order of the District Court. Order reopened, and case remanded.

J. Butler Studley (Brandeis, Dunbar & Nutter, on the brief), for petitioner.

Ephraim Fred Aldrich, for respondent.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This is a petition to revise an order of the District Court, in Bankruptcy, as follows:

"At Boston, in said district, on the twenty-sixth day of May, A. D. 1910, upon the motion of E. Fred Aldrich, Esq., trustee, that the bankrupt be adjudged in contempt for failure to comply with the order of the referee, made on the 18th day of January, 1910, that the bankrupt forthwith turn over to the trustee the last ledger of the Goodrich Polish Company, meaning by that the ledger which contains the transactions of the Goodrich Polish Company from the close of ledger B, now in the hands of the trustee, up to and after the fire:

"Now, therefore, upon a full hearing had, and after hearing arguments of J. Butler Studley, Esq., of counsel for the bankrupt, and E. Fred Aldrich, Esq., trustee, and, after due consideration of the same,

"It is hereby ordered and decreed that the bankrupt is hereby adjudged in contempt of this court, and he is hereby ordered to turn over to the trustee in bankruptcy the book described in the referee's order within 15 days.

"And it is further ordered that in case of his failure so to do he stand committed to the marshal of this district, to be imprisoned until he obeys the order of this court, or is otherwise discharged by the process of law, or until the further order of this court."

This order followed an order by the referee as follows:

"It is therefore ordered that the bankrupt forthwith turn over to E. F. Aldrich, Esq., his trustee in bankruptcy, the last ledger of the Goodrich Polish Company, meaning by that the ledger which contains the transactions of the Goodrich Polish Company from the close of ledger B, now in the hands of the trustee, up to and after the fire."

Intervening was the following order, entered April 27, 1910, and which was duly served:

"Upon consideration of the certificate of George W. Stetson, referee in bankruptcy in the above-entitled case, dated February 23, A. D. 1910, bearing upon the contempt of the bankrupt in failing to comply with one of the orders of the referee aforesaid, to wit, to turn over to his trustee in bankruptcy the last ledger of the Goodrich Polish Company, meaning by that the ledger which contains the transactions of the Goodrich Polish Company from the close of ledger B (now in the hands of the trustee) up to and after a fire which was mentioned in the order of the referee, and on motion made in open court of E. F. Aldrich, trustee in bankruptcy in the above-entitled case,

"It is ordered that the said William H. Goodrich appear at this court as a court of bankruptcy to be holden at Boston, in the district aforesaid, on the twenty-seventh day of April, A. D. 1910, at 10 o'clock in the forenoon, and show cause, if any there be, why he, the bankrupt, should not be adjudged in contempt of this court, and

"It is further ordered that a copy of this order of notice be served on said William H. Goodrich by delivering the same to him personally, or by leaving the same at his last and usual place of abode in Campello, a part of Brockton, in said district, on or before the twenty-sixth day of April, 1910."

Whether the proceeding before us should have been by a writ of error, as in the ordinary course of a proceeding for criminal contempt, or whether by a revisory petition, was left by us in Re Cole, 163 Fed. 180, 183, 90 C. C. A. 50, 53 (23 L. R. A. [N. S.] 255), in an opinion passed down February 5, 1908, an open question. In reference thereto we used the following language:

"On the whole, we accept for this case the position that the proceeding in the District Court was by virtue of the statutory provision expressly authorizing it to compel obedience to its orders; that the way for any party dissatisfied with the conclusion of that court to reach us was by a petition for review; that on such petition we can revise any question of law as to which we may justly infer that the District Court reached a conclusion, whether formally expressed or not, and whether or not formally presented; and that, to that end, we may search, not only the record in that court, but also its opinions."

This seems to be consonant with the language of section 41b of the act of July 1, 1898 (chapter 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]), referring to subject-matters like that now before us:

"The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish such person in the same manner and to the same extent as for a contempt committed before the court of bankruptcy, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of, the court."

This question of the method of procedure we reserve, however, for further consideration on some future occasion if it becomes necessary, as no point in reference thereto is now made. Whichever the method, our holding that the order of the referee is of purely a civil character, and is governed by the rules as to evidence in civil proceedings, while an order like that entered here is of a criminal nature and is governed in large part by the rules relating to criminal proceedings, still stands.

A careful examination of the record shows that the learned judge of the District Court faithfully followed all the rules laid down by us in Re Cole, according to our opinions passed down on February 16, 1906 (144 Fed. 392, 75 C. C. A. 330), and on February 5, 1908 (163 Fed. 180, 90 C. C. A. 50, 23 L. R. A. [N. S.] 255). If the provision of the statute we have quoted has any effect here, it has effect only on the question whether this proceeding before us should be on a writ of error or a petition to revise. It leaves the rules of the common law applicable to a proceeding for this contempt in whatever way it arises. In Re Cole, as the case stood on February 16, 1906, there had been no preliminary order as in the case at bar; and here the notice and the order thereof for service which we have quoted, entered on April 27, 1910, form a sufficient pleading on the part of the promoter, according to the general practice pointed out in Re Cole. Perhaps with the respondent no pleading was necessary; but it is often advantageous to set out the defense in a definite manner, so that the court may pass on it intelligently with a view of bringing the issues clearly before the appellate tribunal. This, of course, should not be allowed to permit unnecessarily one set of pleadings after another, or in any way to cause

protracted delay. No complaint can be made in the present case of the pleadings on either side; and, in all respects, everything required in Re Cole has been fully satisfied. We find, therefore, only two errors suggested in the record, neither of which was especially anticipated by In re Cole, one of which needs only to be noticed, and the other will require further proceedings.

The first is the objection made on account of the learned judge of the District Court making use of the prior proceedings in the bankruptcy litigation. We understand that this included the full referee's report and order, the bankrupt's petition and schedules, and various other matters of record, and especially proceedings upon a claim offered by Walter E. Goodrich. The learned judge stated that he had referred to these matters; and it appears from the record that he informed the counsel for the bankrupt of that fact at the final hearing. The reference to the proof offered by Walter E. Goodrich seems to have been for the purpose of establishing the materiality of the ledger in question; and probably in the mind of the learned judge it was admissible for that purpose, although we do not understand that it rested on the trustee, in proceedings of this character, to show that the book was material, because the trustee was entitled by statute to all the account books of the bankrupt. That account books stand in the same category with any "document," and are covered by that word, is determined by the first section of the act of July, 1898. In Re Cole we give a very broad margin for an examination of the prior proceedings in the same case for the reasons there pointed out. Of course, there is always a probability of some limitation; but we have not examined this here, because it is very plain that no consideration which the court might have given to prior proceedings was prejudicial to the bankrupt with reference to this appeal.

Precisely how and at what time the court should receive information of the character objected to is ordinarily for the court itself to determine, provided only that it gives parties concerned a notice of what it regards as evidence, as was done in the present case. Although the notice was given at the close of the proceedings, it must be assumed that the District Court would have reopened the hearing on that particular point if reason therefor had appeared; while, of course, it also contributes to orderly proceedings in litigation, and to enabling the appellate tribunal to understand the rights of the parties, if all evidence is formally offered in such a way that its materiality may be ascertained and ruled on at the time it is offered.

There is much in the record in regard to the other objection, and much presented by counsel in reference to it; but we think we are at liberty to state what it all amounts to by reference to the opinion of the learned judge of the District Court. He says, in substance, that the bankrupt made no attempt to have the referee's order reviewed, and that, having declined the opportunity to have the order reviewed, he had no right to try on the present issue anything already determined by the referee. Therefore the court substantially ruled out all evidence which might have been produced before the referee, and apparently all which related to the issue tried by the referee, and ruled

that he would hear only evidence concerning what might have occurred after January 18, 1910, the time at which the referee's report was dated. The practical objections to these rulings upon the matter of this order in bankruptcy are especially insistent. The bankrupt is supposed to be stripped of his assets by the adjudication against him, and left, therefore, unable to furnish the funds for very thorough litigations; and especially for anticipating and neutralizing results which may be turned against him for subsequent purposes, more or less remote and distant from what was immediately under consideration. The referee's order was, of course, essential, because it was the basis of any proceedings against the bankrupt. Nevertheless it lacks all the careful provisions which surround a master's report in chancery to give it effect and weight. In the present case it covered a non sequitur. The referee made distinct findings to the effect that the ledger in question was in the custody of the bankrupt a few weeks before the proceedings, and that it was his duty to care for it; but he expressly stated that he was not certain as to anything further. He made no findings based either on inferences or on explicit proofs, that the ledger was in the possession of the bankrupt even as late as the beginning of the proceedings in bankruptcy. No specific finding made by him, therefore, sustained the order on which these present proceedings were based.

But all these incidental considerations are not necessary for the disposal of this petition. It is sufficient that we apply the principle that a judgment against a person in a civil case sustains none of the issues against the same person in criminal proceedings. In the present instance the order reported by the referee, and whatever occurred before him, may, under the liberal rules we have stated in Re Cole, be referred to as having some weight pro and con; but this cannot be accepted as justifying the District Court from failing to revise, on a proceeding like this, the question involved with an open mind. That court was holden to receive all material proofs relating to what preceded the referee's report, as well as to what followed it. Therefore, for this reason alone, the case must be recommitted for further proceedings in that court.

We have discovered nothing in any decision stated by either party which requires us to modify the views expressed in Re Cole.

The decree of the District Court appealed from is reopened, and the case remanded to that court for further proceedings in accordance with the opinion passed down on December 2, 1910; and the appellant recovers his costs of appeal so far as they can be paid from the estate in bankruptcy.

NOTE.—The following is the opinion of Dodge, District Judge, in the court below:

DODGE, District Judge. In July, 1907, the trustee of this estate filed a petition in which he asked the referee to order the bankrupt to turn over to him certain books of account and other books and papers alleged to be in the bankrupt's possession. After repeated hearings, involving delay which, unexplained, would seem exceptional, the referee ordered, on January 18, 1910, "that the bankrupt forthwith turn over to the trustee the last ledger of the Goodrich Polish Company, meaning by that the ledger which contains the

transactions of the Goodrich Polish Company from the close of ledger B, now in the hands of the trustee, up to and after the fire." The bankrupt made no attempt to have this order reviewed by the court, and the 10 days allowed by rule 15 of this court for doing so have expired. On February 28, 1910, the referee filed in court his certificate, dated February 23, 1910, from which it appears that the order to turn over the book referred to was duly served upon the bankrupt February 7, 1910, and that the bankrupt had never complied with it. On April 25, 1910, the trustee moved orally that the bankrupt be adjudged in contempt and punished accordingly, for willful failure to comply with the order. Upon order of notice to the bankrupt, returnable April 27th, to show cause why he should not be adjudged in contempt, there has now been a hearing, at which the bankrupt appeared and testified and was represented by counsel.

The bankrupt filed on April 27, 1910, a motion to dismiss the order to show cause and a demurrer thereto. I ruled that neither of these papers is properly applicable. An order to show cause, issued by the court, is not a pleading, and the party on whom it is served has nothing to do but appear and show cause according to it. The trustee filed a written motion on April 27th to the same effect as his oral motion, and this was filed without objection as of April 25th. Even if the motion to dismiss and demurrer be regarded as applying to the trustee's written motion, they still seem to me unnecessary. The proceedings are under section 41b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]), which provides that the judge shall "in a summary manner hear the evidence as to the acts complained of." No pleadings of any kind on the bankrupt's part seem to be required or contemplated, still less dilatory pleadings like these. They may, however, be regarded, together with an "answer," sworn to by the bankrupt, also filed on April 27th, as putting on record a statement of the causes relied on by him why he should not be adjudged in contempt, and permitted for that purpose, whether strictly admissible or not.

In order to warrant the court in adjudging the bankrupt in contempt and punishing him accordingly, it is not enough to show that the referee's order has not been obeyed. It must be made to appear affirmatively that when the order was made the bankrupt had power to obey it and that the failure to obey was willful. This is settled, so far as this court is concerned, by the decision of the Court of Appeals for this Circuit in Re Cole, 163 Fed. 180, 90 C. C. A. 50, 23 L. R. A. (N. S.) 255, and the same decision affords an illustration of the amount of proof necessary for the purpose. In that case, after the referee had certified to the District Court his finding that the bankrupt was withholding and concealing $2,425 from the trustee, and his order, made upon that finding, that she pay over that sum to the trustee on or before a certain date, and after the District Court had sustained the referee's finding and order, and after a separate hearing had before the court upon a petition by the trustee to adjudge her in contempt and punish her for noncompliance with the order, which separate hearing was had as directed by the Court of Appeals (144 Fed. 392, 75 C. C. A. 330), and after the District Court, as the result of that hearing, had adjudged the bankrupt in contempt and ordered her imprisonment, the Court of Appeals reversed the judgment and order, on the ground that "there was in fact not sufficient evidence of the kind which the law requires on the exact issue pending here; that is to say, whether Mrs. Cole willfully refused to pay over moneys which it was necessary to show that she could pay over at the specific date to which the order of the court properly related." 163 Fed. 188, 90 C. C. A. 58, 23 L. R. A. (N. S.) 255.

The trustee's petition in Re Cole did not raise the exact issue defined as above by the Court of Appeals. It showed "only that Mrs. Cole had been ordered to pay and had not." It contained "no allegation that her failure to pay was willful, nor anything to show that it was not caused by mere inability." The Court of Appeals said that in strictness "this would be sufficient to put her on the defensive." It nevertheless proceeded to consider the evidence, because no objection had been raised on that account, and both parties had gone to trial on the merits, with no misunderstanding as to the fundamental questions involved. 163 Fed. 186, 90 C. C. A. 56, 23 L. R. A. (N. S.) 255.

The trustee's motion in the present case is that the bankrupt be adjudged in contempt and punished "for willfully having failed to comply with the order of the referee," but it contains no direct allegation that the failure was in fact willful, nor any allegation that it was not caused by mere inability to comply. It may be doubted whether in strictness this is enough to put the bankrupt on the defensive, and the objection is raised by him in his demurrer that there is no petition or motion stating the facts constituting the alleged contempt with sufficient clearness and accuracy. I do not think, however, that the case should be disposed of upon the question whether or not the motion is specific enough, because here, as in Re Cole, the case has been submitted upon its merits and with no misunderstanding as to the fundamental questions involved.

The evidence I have considered consists in the first place of an attested copy of the referee's order, made January 18, 1910, which accompanies and is referred to in his certificate of noncompliance with the order, filed here February 28, 1910. The referee has set forth, together with his order, the substance of the evidence before him and his findings, and upon the order and findings is the marshal's return of service of the paper upon the bankrupt.

I have also considered as evidence for the purposes of this hearing the bankrupt's petition and schedules and so much of the proceedings on record in the case as is referred to in my opinion dated August 11, 1906, upon a petition by certain creditors for a review of orders by the referee allowing a claim offered for proof against this estate by Walter E. Goodrich, who is further referred to below, appointing a trustee, and allowing the bankrupt's attorney to represent certain other creditors at the first meeting.

The bankrupt urged and requested me to rule that no part of the referee's report and order, and no findings of fact or rulings of law contained in it, could be considered as evidence against him in the present proceeding; also that the only evidence to be considered was the oral testimony heard by me, being all of it testimony introduced by the bankrupt. I ruled, not only that the referee's order and whatever else is contained in his certificate accompanying it is proper to be considered for the purposes of this hearing, but, further, that the bankrupt, having declined his opportunity to have the order reviewed by the court, had no right to retry at this hearing issues already determined by the referee. I further ruled that at least so much of the proceedings on record in the case as I have indicated above is evidence proper to be considered at this hearing. In re Cole, above referred to, 163 Fed. 188, 90 C. C. A. 58, 23 L. R. A. (N. S.) 255.

The referee found in making his order, among other things, that the bankrupt, whose own petition, filed April 1, 1905, began these proceedings, had formerly carried on business, either alone or in company with Walter E. Goodrich, as the Goodrich Polish Manufacturing Company in Campello; that, after a fire in the factory occupied by him for that purpose, he sold the business in August 1903, to two persons who continued the same business in the same factory until about December, 1903, and then removed it to Maine; and that with the business were transferred the books of account, papers, and everything relating to it. He found, also, however, that between June, 1903, and December, 1904, the bankrupt produced the books of account before referees who held hearings in Brockton and in Boston to determine the amount of his loss by fire, that the same books were in the bankrupt's possession or control after the hearings from December, 1904, to February, 1905, that in the latter month they were sent by Walter E. Goodrich to Maine, to the persons who had purchased the business, but that one of the books, being the ledger ordered to be surrendered to the trustee, was returned in March, 1905, by express, and received at the factory referred to in Campello, directed to Walter E. Goodrich. Walter E. Goodrich is the bankrupt's brother, and he had supervised the keeping of the Polish Company's books while its business was being carried on there, if he had no other connection with it. Lester O. Goodrich, another brother of the bankrupt, had a desk in the same factory at the time, and on his desk the book in question was last seen, according to the evidence before the referee.

The factory referred to was operated after December, 1903, when the Polish Company business was removed from it, by the Campello Box Company, of which the bankrupt was treasurer, until the spring of 1904; then by the bankrupt, who bought the Box Company's business, until July, 1904; then by Walter E. Goodrich, to whom the bankrupt sold out; then by Morton T. Goodrich, still another brother, to whom Walter E. Goodrich sold out; and Morton T. Goodrich was in control of it when the book arrived and was placed on Lester O. Goodrich's desk. The referee's conclusion from the evidence was: "In this case I am satisfied that the last ledger of the Goodrich Polish Company, described in the petition, was in the possession, or at least control, of the bankrupt, or those in his employ or with whom he was interested, within a few weeks prior to the bankruptcy, and that it was his duty to care for this in such a manner that it might be available for the settlement of his estate."

The book here in question is one of the books referred to in the bankrupt's schedule B6 by the words there inserted, "Columbia Shoe Dressing Company, books of the Trilby business, which were bought by them, Bath, Maine." It is, therefore, a book which, by his own showing, was material for the purposes of that examination for which section 7a9 of the bankruptcy act provides, and to which that section made it his duty to submit. .It appears from the referee's report that it was within his power to obtain it and use it, when it was for his own interest to do so, in proving the amount of the loss by fire. It further appears that it was within his power to get it back from Maine in March, 1905. His petition and schedules are dated March 31, 1905, and the inference that it must have been sent for to be used in preparing them, or at least to be used in the bankruptcy proceedings, if thought best, is so strong that convincing proof to the contrary is required to overcome it. No other reason for getting it back from Maine at that particular time appears.

The evidence recited by the referee leaves the book, after its return from Maine, on the desk of one of the bankrupt's brothers in a factory under the control of another brother, and directed to Walter E. Goodrich, above referred to. In the opinion dated August 11, 1906, I have had occasion to find that in an attempt made before the referee by this same Walter E. Goodrich to prove a claim of more than $15,000 against this estate, based in great part upon alleged transactions relating to the Polish Company business, no books were produced to support the claim, there was strong reason to believe that he was in fact a partner in the polish business with the bankrupt, and the bankrupt under no liability to him whatever in respect of that business; also that his evidence, as well as that of the bankrupt, given in support of his claim, was characterized by want of candor and frankness. The evidence dealt with in that opinion further shows that, on the strength of his alleged claim of over $15,000, out of a total indebtedness of $39,631, Walter E. Goodrich had been active in opposing the election of the present trustee, and had co-operated to that end with one member of a firm of lawyers, counsel for the bankrupt before his petition was filed, while the other member of the firm was acting as the bankrupt's attorney in these proceedings.

The conduct of the bankrupt and his brother, Walter E. Goodrich, heretofore brought to my attention as above, in connection with their testimony heretofore given before the referee, as stated in the opinion dated August 11, 1906, seems to me not only to warrant, but to require, the conclusion that each of them is under a strong motive to keep the books of the Polish Company, not already surrendered, away from the present trustee, now charged with the duty of investigating the doings of that so-called company, or of the bankrupt under that name. Nor can I doubt, now that the bankrupt has made no attempt to appeal from the referee's findings and order of January 18, 1910, that I am justified in treating him as then in control of the book in question, and, therefore, as able to produce it and surrender it to the trustee, unless he shows affirmatively, by evidence not already passed upon, something which has happened to the book since it was returned to the factory in March, 1905, which makes its production impossible. If he intended to deal honestly with his creditors in the bankruptcy proceedings he was then about to institute, he cannot have mistaken the importance for that purpose of the

production by him of this and all the other Polish Company books—aside from the fact that the bankruptcy act made its production his duty. The circumstances shown I regard as fully warranting the conclusion that, if the book was in Walter E. Goodrich's control, it was in the bankrupt's control. To credit him with an honest purpose regarding the book is to exclude the supposition that he has merely forgotten or lost sight of it, as if it had been something of no significance or importance so far as his creditors or his duty were concerned. No ordinary excuse for not producing it could be accepted, still less an excuse which tends only toward a suspicion of his good faith.

The referee has not, it is true, made an express affirmative finding that the book was in the bankrupt's possession or control on January 18, 1910. But he has made an order which so plainly involves that conclusion from the evidence before him as to leave no room for doubt that such a finding is implied, especially now that the bankrupt has allowed the opportunity to pass for the correction of any such informality. I next consider what is offered by the bankrupt to oppose that conclusion.

The only evidence on his behalf at this hearing is his own testimony, that of his brother, Morton T. Goodrich, that of a Mr. Poole, and an agreement as to the testimony which would be given by his original attorney in the bankruptcy proceedings, if present in person.

The bankrupt himself testified that since January 18, 1910, he had made diligent search for the book all over his brother's place, in his own barn, stable, and basement, and in his brother's stable; that he had inquired of his brother, Walter E. Goodrich; that the book was not in the office of the Regal Shoe Company in Whitman, where he has been employed since April 30, 1905; that he knows of no place near his own house in Campello, or any other place, where the book is; that he has omitted nothing he could do, so far as he knows, to get the book since January 18, 1910; that it has not been in his possession at any time since that date; that he does not know where it is now, and cannot recall when he last saw it; that so far as he recalled he had not seen it since the insurance hearings; that he is now unable to produce it; that he knows of no reason why he should not produce it, if able; and that he knows of no person likely to know its whereabouts, of whom he has not inquired, since January 18, 1910. Evidence from him was offered to show that the book was not used in making up his bankruptcy schedules, that he had then no connection with the premises occupied by Morton Goodrich and had no control over them, and that at some time after March or April, 1905, and before 1910, those premises were cleaned out and all old papers there destroyed. I excluded this evidence, both on the ground that the bankrupt could not now retry questions settled by the findings of the referee from which he had never appealed, and also because, as was stated and not disputed, the same evidence was heard by the referee. He further testified that Lester O. Goodrich was in the South and Walter E. Goodrich in Salt Lake City at the time of this hearing; the latter having permanently given up his residence in Brockton and sold out his property at auction. It appeared that both these brothers had testified before the referee. Neither gave any evidence at this hearing. The factory referred to was, according to the bankrupt, about 100 feet from the house in which he was living at the time the book was received. It has since burned down, and no member of the bankrupt's family had anything to do with it for a year or more before it was burned.

Morton T. Goodrich testified that he did not know where the book in question was, and that he had not seen it since January 18, 1910; but he also testified that he had never made any effort to find it, and that he never knew it was in the factory referred to. Poole's evidence tended only to show that the bankrupt's reputation was good so far as he knew. The testimony which it was agreed would have been given by the bankrupt's former attorney was that he had known the bankrupt since 1882, had been counsel for him in many matters, that he never had the book referred to in his possession, that he never used it in making out the bankruptcy schedules, that he does not know where it is, and has never seen it since the insurance hearings.

The Court of Appeals said in Re Cole, above referred to, page 184 of 163

Fed., page 54 of 90 C. C. A. (23 L. R. A. [N. S.] 255): "It seems to be conceded on all sides that before committing for contempt the court should be satisfied beyond reasonable doubt of a willful refusal or a willful act on the part of the person proceeded against"—and on page 189 of 163 Fed., page 59 of 90 C. C. A. (23 L. R. A. [N. S.] 255), it approves language used by the Court of Appeals for the Fifth Circuit in Samel v. Dodd, 142 Fed. 68, to the effect that it must appear clearly and affirmatively from the record, notwithstanding the bankrupt's sworn denials, that he has the power to comply with the order made. This is the rule to be followed here, whether or not support for a rule less strict can be found elsewhere. See Re Marks (D. C.) 176 Fed. 1018. But its application, of course, depends on the particular facts of each case. The court said in Re Cole, page 189 of 163 Fed., page 59 of 90 C. C. A. (23 L. R. A. [N. S.] 255), that its conclusion could hardly become a precedent for any future case, and the decision nowhere indicates that a court may not be satisfied beyond a reasonable doubt, or find the bankrupt's ability to comply clearly and affirmatively shown from the record, when a sufficiently strong presumption of such ability appears, and he fails to meet and overcome it by reasonable explanation. In such a case a judgment in contempt has been recently sustained by the Court of Appeals for the Second Circuit. Re Stavrahn, 174 Fed. 330, 98 C. C. A. 202. Re Cole is there cited, without suggestion of dissent as to any rule laid down in it. The bankrupt had been ordered to pay over a sum of money to the trustee. Without appealing from the order, he had not obeyed it. The presumption that he could do so, created by the order and his failure to take any steps to review the order, was held not overcome by averments that he had no such sum in his possession or control, directly or-indirectly, or any means of obtaining it, and therefore sufficient to warrant the court in finding that his failure to obey was willful.

When the question is whether the bankrupt had or not money enough on a given day wherewith to make a specified payment, it seems to me that the presumption against him might well be overcome by evidence of inability less complete in some aspects than would constitute a reasonable explanation in a case like this. The book here in question, important as it is in the administration of this estate, does not appear to have been required for any other purpose since the bankrupt filed his petition within a few days after the book arrived at his brother's factory. If it had become the property of the purchasers of the Polish Company business, as was somewhat urged, there is no evidence to show that it was ever sent back to them in Maine, or even that they wanted it sent back. To suppose that they attached importance to it as part of their property tends only to discredit the theory that the bankrupt and Walter E. Goodrich may have honestly lost it. The bankrupt's evidence before me, above set forth, might be accepted as a reasonable explanation, if it related to something with regard to which he was under no special responsibility. But the book in question is a book of account relating to his own estate, which he ought to have surrendered as soon as possible to the trustee. The trustee has long been trying in vain to get it. The evidence affords strong reason to believe it especially important as regards the large claim asserted by Walter E. Goodrich, and strong reason to suspect a motive on the bankrupt's part and that of Walter E. Goodrich to prevent its production, if possible. In view of all this, the finding seems to me justified that he has not overcome the presumption of his ability to produce the book and of his willful failure to do so, which arises from the circumstances of the case, the referee's order and findings, and his own failure to seek any review of that order.

I must, therefore, adjudge the bankrupt to be in contempt of this court, and order him to turn over to the trustee in bankruptcy the book described in the referee's order within 15 days; and I also order that in case of his failure so to do he stand committed to the marshal of this district, to be imprisoned until he obeys the order of this court, or is otherwise discharged by due process of law, or until the further order of this court.