SCHWEER v. BROWN.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1904.)

No. 1,921.

1. BANKRUPTCY — COMMITMENT OF BANKRUPT FOR REFUSAL TO SURRENDER PROPERTY—IMPRISONMENT FOR DEBT.

The obligation of a bankrupt to surrender to his trustee property in his possession belonging to his estate is not an obligation to pay a debt, the title to such property being in the trustee; nor can he, by refusing to comply with an order of court requiring him to make such surrender, convert himself into a debtor, so as to render his commitment therefor an imprisonment for debt.

2. SAME.

The mere denial by a bankrupt, under oath, of the possession of assets belonging to his estate, is not conclusive, and does not preclude the court from enforcing its order requiring him to surrender such property to his trustee by imprisonment for contempt, where it finds, on sufficient evidence, that it is in his possession or under his control.

3. SAME—SUFFICIENCY OF EVIDENCE.

Evidence considered, and *held* to support a finding that a bankrupt had in his possession or under his control assets belonging to his estate, and an order requiring him to surrender the same to his trustee under penalty of punishment for contempt.

Appeal from the District Court of the United States for the Eastern District of Arkansas.

A petition of creditors, an order to show cause, a response by the bankrupt, and a hearing before the referee in bankruptcy upon the issue joined, resulted in a finding by the referee that Schweer, the bankrupt, had in his possession or under his control assets belonging to his estate in bankruptcy of the amount or value of $17,895.61, and an order that he surrender the same to the trustee. Upon the application of the bankrupt the matter was certified to the District Court of the United States for the Eastern District of Arkansas, and that court, upon a review of the proceedings and the evidence before the referee, found that the bankrupt had in his possession or under his control assets of his estate in bankruptcy amounting to $15,607.61, and thereupon ordered him to surrender the same to the trustee within a specified time, and that, upon his failure so to do, he be committed to the county jail of Pulaski county, Ark., as for contempt, and be there detained until the further order of the court, or discharged by due process of law. The bankrupt appealed.

Harry H. Myers and U. S. Bratton, for appellant.

George B. Pugh and Robert E. Wiley, for appellee.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first contention of the bankrupt is that the enforcement of the order of the District Court would constitute imprisonment for debt, and would therefore be in contravention of the provision of the Constitution of Arkansas (Const. art. 3, § 16) that no person shall be imprisoned for debt in any civil action on mesne or final process unless in case of fraud. This is no longer a debatable question. Assuming the correctness of the finding of the referee and of the District Court that the bankrupt had in his possession property belonging to his estate in bankruptcy, his obligation to comply with the order of the court by surrendering it to the trustee is not the obligation to pay a debt. The adjudication in bankruptcy operated to transfer to the trustee the title to all of the property of the bankrupt which was subject to distribution among his creditors. His obligation and his duty to surrender to the trustee property in his possession which belongs to the trustee, and not to him, cannot be converted into a debt, at his option, by his mere refusal to comply with the order of the court. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Purvine, 96 Fed. 192, 37 C. C. A. 446; In re Rosser, 101 Fed. 562, 41 C. C. A. 497; Ripon Knitting Works v. Schreiber (D. C.) 101 Fed. 810; Id., 104 Fed. 1006, 43 C. C. A. 682; In re Schlesinger, 102 Fed. 117, 42 C. C. A. 207. These cases also furnish a conclusive answer to the claim of the bankrupt that his mere denial under oath of the possession of assets is conclusive, and that in such case the only remedy of the trustee and the creditors is by proceedings under the penal sections of the bankrupt act.

The final question is whether the evidence presented by the record is sufficient to support the finding upon which the order of the District Court was based. Without stopping to consider the measure of proof which is applicable to a case of this character—whether it need only be clear and convincing, as in cases of fraud, or whether it must be sufficient to convince beyond a reasonable doubt, as in criminal actions or proceedings—it will do to say that a careful examination of the record has satisfied us beyond a reasonable doubt that when the order was made the bankrupt had in his possession or under his control assets in the amount or value of $15,607.61, and that such assets were then a part of his estate in bankruptcy. We are also satisfied that in the application of the evidence to the issue the District Court was duly considerate of the nature of the proceeding and of the rights of the bankrupt, and that, if there was error in the ascertainment and fixing of the amount specified in the order, it was an error of which the bankrupt has no just cause for complaint.

On July 1, 1902, the bankrupt, who owned and conducted a store in a little town in Arkansas containing about 100 inhabitants, had a stock of general merchandise of the value of $5,000, and had on hand about $1,000 in money and some outstanding accounts. Between that time and the latter part of the following November, when the pro-

ceedings in bankruptcy were instituted, he purchased from various wholesale houses goods of the value of over $27,000. The record presents a clear case of a deliberate purpose on the part of the bankrupt to defraud the merchants from whom his purchases were made, and to despoil them of their property. This purpose was thinly veiled; was scarcely denied at the hearing. A large portion of the goods was quickly sold by him to other persons without breaking the packages in which they came, and in some instances shipments were diverted without even unloading the goods from the cars. The bankrupt claims that some of these sales were at cost, and the remainder at a substantial profit, and that in every case he actually received payment for goods so disposed of. In the ascertainment of the amount which he should be ordered to turn over to the trustee, he was therefore properly charged with the proceeds. In the endeavor to ascertain what became of the money and property which it was conceded the bankrupt had, the controversy at the hearing before the referee centered principally about two claims made in his behalf. A few days before the institution of proceedings in bankruptcy, and in contemplation of such proceedings, the bankrupt made a statement under oath that the value of his stock of merchandise then on hand was $2,300. The approximate accuracy of this statement was demonstrated by the inventory of the receiver, who took temporary charge of the store, which showed the value of the property to be $2,400. The bankrupt claimed at the trial that his sworn statement was inaccurate, that at the time it was made he actually had on hand between eight and nine thousand dollars worth of merchandise, and that, during the three or four days which elapsed before possession was taken for the receiver, about two-thirds thereof was stolen in some mysterious way by persons unknown. The evidence offered in support of this contention was not worthy of serious consideration. The claim was also made that between the 1st day of July, 1902, and the time when the receiver took possession in the following November, the bankrupt lost and squandered $13,700 in gambling, in betting upon the races, and in riotous living. But his testimony upon that subject was so vague, indefinite, and unsatisfactory as to be entitled to very little credit in a court of justice. Almost every attempt on the part of counsel for the trustee to secure from the bankrupt a statement of the details of his alleged losses was frustrated by the answer that he did not remember. Such corroboration as his testimony received—and it was only in part—was from testimony similar in character of professional gamblers, who in many instances contradicted each other and the bankrupt himself. The proper limits of an opinion forbid more than a general characterization of the mass of inconsistencies and improbable statements appearing in the record. The referee, out of an abundance of caution, allowed for these causes a loss of $6,000. Aside from the amounts covered by these claims, there still remained a balance of several thousand dollars, to account for which no substantial effort whatever was made. The District Court, in making the order complained of, reduced by over $2,000 the amount found by the referee to be in the possession or under the control of the bankrupt. The considerations which led the court to this action do not appear, but it was doubtless due to a desire to avoid any error prejudicial to the rights of the bank-

rupt.   In a proceeding of this character, no punishment can be inflicted for reprehensible and dishonest conduct, but, in a careful effort to avoid such result, a court, when called upon to pass upon the weight of testimony and the credibility of witnesses, is not to be deprived of those faculties of judgment and discrimination as to what is true or probable, on the one hand, and untrue, improbable, or absurd, upon the other, which are permitted to be exercised by juries in similar cases.

The order of the District Court will be affirmed.