# IN THE MATTER OF FLORENTINO MACHARGO, Bankrupt.

Bankruptcy, No. 30.

1. When the proof shows a bankrupt to be in possession of money or property belonging to the bankrupt estate, and he disobeys an order to deliver the same to the trustee, he may be imprisoned as for a contempt of court.

2. Such an imprisonment is not one for debt.

3. The giving of false, vague, and misleading testimony is a contempt of court.

4. Courts of bankruptcy have no broader powers to punish for contempt than other Federal courts.

5. There is no specific provision in the Constitution of the United States against imprisonment for debt. It seems that it is the state Constitutions that usually contain it.

Opinion filed July 15, 1908.

*Mr. T. D. Mott, Jr.,* and *Mr. H. H. Scoville,* for petitioning creditors.

*Mr. Cay. Coll y Cuchi,* for the bankrupt.

RODEY, Judge, delivered the following opinion:

This matter is before the court on the application of the bankrupt that the court vacate its order for his arrest and commitment, made under date of July 9th, inst.

The facts in the whole matter are, in brief, about as follows:

The bankrupt was, for some time previous to the year 1907, a general merchant at Morovis, on this island. In the month of May of the latter year he made a showing to his creditors that there was due and owing to him in the shape of accounts from

Matter of Machargo.

his customers a little over $12,500, and that he had then a stock of goods on hand of the value of about $5,000. At this time he made a bargain for an extension of time with his creditors, and then, or shortly thereafter, paid them about $3,500. In December of that same year, he, in the meantime, having failed to make any payment, as he had promised to make, his creditors filed a petition in involuntary bankruptcy against him. He resisted this, and, after some pleading, a full hearing was had before the court, without a jury, by agreement of the parties. This took place on the 21st of February, 1908, at the conclusion of which he was duly adjudged a bankrupt. The evidence taken orally before the court at this hearing was very unsatisfactory, and the mannerisms and manifest evasions of the bankrupt as to giving any proper account of what he did with his property between May and November previous to the filing of the petition against him was very annoying to the court.

The cause was then referred to Robert H. Todd, Esq., one of the referees in bankruptcy of this court, and in due time, in March, 1908, the first meeting of creditors was had, and the bankrupt was called before the meeting to testify. His testimony on this occasion was about as evasive and unsatisfactory as it had been at the time he was adjudged a bankrupt. On pages 13 and 14 of the record of this proceeding, it is clearly shown, by his own admissions, as it practically had been at the time of his adjudication, that between May, 1907, and November of that year, he collected a little over $5,000 of the amounts due him from his customers, and realized nearly $4,000 for goods sold out of his store; or in all it appeared that, in six or seven months, he had become possessed of over $9,000 in cash. On this amount he claims that he paid this $3,500 to his cred-

Matter of Machargo.

itors, as before mentioned (but that has never been very clear to the court), and that he spent the balance, amounting to between five and six thousand dollars, for his household expenses during that time, but that he kept no books or other accounts that show this in any manner.

It appears from the record taken before the referee, that the proceeding was not conducted in the manner contemplated by the bankruptcy act; that is, that the bankrupt should appear there and give all possible polite aid and information to his creditors, but, on the contrary, his whole testimony, as given there, was insufficient, evasive, incredible, and, to say the least, annoying and contemptuous. His counsel does not appear to have made a proper effort to give him correct instructions in this regard.

At the end of the hearing, the referee found that the bankrupt had in his possession or under his control, and had concealed, property or its value belonging to the estate to the amount of $4,750, and ordered, by a proper citation, that the bankrupt deliver the same or the value thereof to the trustee within ten days from that date. The bankrupt, instead of appealing from this order direct to the court, either by himself or his counsel, paid no attention whatever to the same, but treated it with contempt. Thereupon the matter was, by the referee, certified to the court. In response to this, the court issued a rule against the bankrupt, to show cause why he should not be adjudged in contempt on account of refusing to turn over to his trustee the property or its value thus found to be in his possession. On June 2d, 1908, the bankrupt and his counsel came into court, and, without giving what we consider a proper excuse for the bankrupt's con-

temptuous treatment of the order of the referee, made a general denial that the former had in his possession any money or goods, and asserted that it was a physical impossibility for the bankrupt to comply with such order of the referee or with any order of the court in the premises, looking to the turning over of any property, or any payment of any sum of money, for the alleged reason that he had no property to turn over or money with which to pay. The court was not satisfied with this showing, but, as we were about to make a trip to the States for a month or so, and not desiring to keep the bankrupt in jail in the meantime, an order was entered, giving him until Monday, the 6th of July, 1908, or more than an additional month, to turn over to the trustee in bankruptcy some substantial portion of the goods and merchandise or the value thereof, so found by the referee to be in his possession, and also ordering him to, on said date, show the fact of such turning over or of such payment to the court, and to account or properly explain the disposition made of the balance of said goods or money, or, in default of so doing, to stand and abide the further order of the court as for a contempt.

On the 6th day of July, the court was in session, but the bankrupt paid no attention whatever to the order thus entered on June 2d, but treated the same with contempt. Therefore, on the 9th day of July, we entered an order setting out these facts, and issued an attachment for the bankrupt, and ordered that a commitment issue, when he should be brought before the court, imprisoning him until our further orders.

The bankrupt was thereupon arrested and brought before us, when his counsel filed what we consider a very lame excuse and showing for the failure of the bankrupt in not responding to

Matter of Machargo.

the order of June 2d, in any way. He further filed a motion to set aside the order of arrest, and prayed that the commitment be not issued, and then endeavored to make a showing that the bankrupt in fact has no money or property of any kind or character whatever, and made another lame attempt to account for many sums of money disposed of by the bankrupt that were not mentioned at either of the former hearings. No vouchers are produced or filed to substantiate the making of any of the expenditures referred to. This last hearing, that has now lasted, off and on, for two or three days, has been had with reference to this latter motion, counsel for the creditors and counsel for the bankrupt taking part. During this time the bankrupt, by consent of the court, has been permitted to remain in the custody of his counsel, instead of being committed to jail.

We have been cited to a great many cases reported in the Federal Reporter, from which we gather that it undoubtedly is the law that, where a bankrupt has been shown to be in possession of property or money belonging to the bankrupt estate, he can be ordered summarily to turn it over to the trustee of the estate, and he can be punished as for a contempt on his failure to do so. It is held that, in proper cases, this cannot be construed to be imprisonment for debt, which, although not specifically prohibited by any direct law of the United States itself (see Rivera v. Cadierno, 2 Porto Rico Fed. Rep. 358), is abhorrent to our system of government, and is specifically prohibited by the Constitution or laws of many of the states of the Union. As to the power of courts to commit for a contempt in not obeying such an order to turn over money or property, see Re Tudor, 100 Fed. 796; Ripon Knitting Works v. Schreiber, 101 Fed. 810; Re Levin, 113 Fed. 498; Re De Gottardi, 114 Fed.

Matter of Machargo.

328; Re Hershkowitz, 136 Fed. 950; Re Levy, 73 C. C. A. 558, 142 Fed. 442; Re Frankfort, 144 Fed. 721. We also find it to be the law that "the giving of false, vague, and evasive testimony by an alleged bankrupt, on his examination before a special commissioner, with the intention of misleading the court, and concealing assets of his estate, is a misbehavior, and constitutes a contempt which the district court has power to punish under U. S. Rev. Stat. § 725, U. S. Comp. Stat. 1901, p. 583, on a summary hearing, without a jury." See Ex parte Bick, 155 Fed. 908.

It seems, also, that the obligation of a bankrupt to surrender to his trustee property in his possession belonging to his estate is not an obligation to pay a debt, because the title to such property is in the trustee; nor can a bankrupt, by refusing to comply with the order of a court, requiring him to make such surrender, convert himself into a debtor, so as to render his commitment therefor an imprisonment for debt. See Schweer v. Brown, 64 C. C. A. 574, 130 Fed. 328.

Notwithstanding the fact that we personally saw this bankrupt at the time of his adjudication, and heard his evasive and vague testimony, and notwithstanding that we have carefully read the same character of testimony given by him before the referee at the first meeting of creditors, and also have taken note of his contemptuous actions and his conduct before the referee during these proceedings, still, on the whole, we are not satisfied that he now, at the present time, actually has in his possession the property or money which the referee has found he ought to have, and that therefore there is reasonable doubt as to whether or not it is now physically possible for him to comply with the order of the referee or of the court in the premises. We

### Matter of Machargo.

have read with care the argument of Judge Caldwell in the case of Boyd v. Glucklich, 53 C. C. A. 451, 116 Fed. 131, and we think with that judicial officer that "while the bankrupt act authorizes summary proceedings, they must be compatible with the due and orderly administration of justice, and conducted with a proper regard for the fundamental rights of the citizen, which rights are not forfeited by the adjudication in bankruptcy;" and we further agree with the views expressed in that case, that "§ 41, bankruptcy act 1898, does not invest courts of bankruptcy with broader powers in the matter of punishment for contempt than are possessed by other Federal courts, and the mode of proceeding in such courts to determine whether a constructive contempt has been committed should conform to the established practice in like cases in other courts of the United States, as near as may be, and what is legally sufficient to purge a contempt in such other courts is sufficient in a court of bankruptcy."

We think that where there is reasonable doubt of the fact that he has now the money or property, or of the actual present physical ability of the bankrupt to comply with an order to turn over the same to his trustees, that his punishment for that offense should be carried on under those provisions of the bankruptcy act of 1898 which provide for the same, aand give such defendant the right to trial by jury.

It has been brought to the attention of the court that this bankrupt, since the making of our order of June 2d against him, as aforesaid, has been arrested for alleged collections and embezzlement of some part of the moneys due his estate since his adjudication as a bankrupt, and that he has been bound over to await the action of the proper grand jury in that behalf, which order and holding will stand. This being the fact, the

Matter of Machargo.

court will not require a further bond from him in the premises, because he can be indicted for all his misdoings by that same grand jury.

Notwithstanding all this, we cannot permit such contemptuous action as this to go unnoticed, and, because of his failure to respond to the demands of the referee and to the orders of this court, and because of his general vague and evasive answers, we do now find him guilty of a contempt, and, as punishment therefor, an order will be entered, sentencing him to imprisonment in the San Juan jail for the period of thirty days, and, further, to the payment of the costs of the attachment recently issued against him.

All previous orders heretofore made in the premises will stand vacated or modified, as may be necessary to conform to these views, findings, and sentence.