KIRSNER v. TALIAFERRO et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit. December 21, 1912.)

Nos. 1,122, 1,132.

1. BANKRUPTCY (§§ 439, 449*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.
   The remedy by petition for revision given by Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), and that by appeal given by section 25a, are mutually exclusive.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. §§ 439, 449.*
   Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 439*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.
   An order of a court of bankruptcy requiring a bankrupt to turn over property to his trustee, and committing him until he does so, made in a direct summary proceeding by the trustee, is reviewable only by petition to revise under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 439.*]

3. BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY—EVIDENCE TO SUPPORT.
   The fact that a bankrupt merchant appeared from an inventory taken some time before the adjudication to have more goods than were subsequently accounted for, while it may be made the basis of an order requiring him to account for the difference, must be used with caution, as

the inventory itself, either from carelessness or by intention, is likely to have been unreliable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

4. BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY—EVIDENCE TO SUPPORT.

Where it fairly appears that a bankrupt or another had property of the estate in his possession on the eve of the bankruptcy, it is presumed to remain under his control until he has satisfactorily accounted for it, and his mere denial under oath is not sufficient.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

5. BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY—HEARING.

An order requiring a bankrupt to turn over property to his trustee must be based on a petition therefor, which should sufficiently describe or identify the property to enable the bankrupt to know at least its general character, and such petition must be followed by notice giving the bankrupt fair and reasonable time to answer and be heard. At such hearing the bankrupt's own testimony, given on his examination, is admissible against him. If the referee makes the order, it is reviewable by the District Court either on the bankrupt's petition or on a rule against him to show cause why he should not be committed for contempt, and on such rule the court is bound to consider any new evidence offered by him, but after it has, on all the evidence before it, confirmed the order of the referee, and made an order of commitment, it is not required, except in its discretion, to again consider the evidence on a so-called petition for a rehearing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

6. BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY—COMMITMENT FOR CONTEMPT.

To justify an order requiring a bankrupt to turn over property to his trustee, to be enforced by imprisonment for contempt until it is complied with, the evidence should establish the fact of his present ability to comply with the order beyond a reasonable doubt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

Petition for Revision of Proceedings and Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy; Edmund Waddill, Judge.

In the matter of Isaac Kirsner, bankrupt; W. C. D. Taliaferro, C. Vernon Spratley, and Allan D. Jones, trustees. From an order requiring bankrupt to turn over property, he appeals and also files petition for revision. Appeal dismissed, and order affirmed on petition for revision.

Thomas H. Willcox, of Norfolk, Va. (Willcox, Cooke & Willcox, of Norfolk, Va., and Dave B. Kirsner, of Baltimore, Md., on the brief), for petitioner and appellant.

L. A. McMurran and W. B. Colonna, both of Newport News, Va. (Nelms, Colonna & McMurran, of Newport News, Va., on the brief), for respondents and appellees.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. On December 27, 1911, Isaac Kirsner was adjudicated a voluntary bankrupt. Trustees were duly elected. On February 23, 1912, they filed with the referee a petition alleging that the bankrupt was in possession of property belonging to his estate, and praying that he might be required to turn it over to them. On March 8th he answered. He said that he had delivered every dollar's worth of property to his trustees. A hearing was thereupon had before the referee. The trustees relied upon the testimony given by the bankrupt at his examination by the creditors, and upon the books and papers which he had given the trustees. He was examined by his counsel on his own behalf in opposition to the granting of the trustees' petition. On May 9, 1912, the referee found that there had been traced to the possession of the bankrupt goods and merchandise of the kind and sort carried by and dealt in by him in his retail stores of an invoice or wholesale value of $4,166.54, and that the bankrupt had failed to account for the same. He was ordered within 15 days to deliver to the trustees goods and merchandise of the character and class heretofore carried by him, being dry goods, notions, and ladies' ready-made clothing to the value of at least $4,166.54 wholesale price.

On the day upon which the referee made the above findings and passed the order recited, both parties filed petitions for review. The trustees complained that the evidence showed that the bankrupt had withheld from them more goods than the referee had found that he had. The bankrupt said that the record did not show that he had withheld any. Both parties had their hearing before the learned judge of the District Court. He overruled both petitions for review. He approved and confirmed the order of the referee. He ordered that the bankrupt should on or before the 17th of July, 1912, comply with the referee's order, or, in the alternative, should pay to the trustees the sum of $3,000 in cash, which the court fixed as the equivalent cash value of the goods, which the order required the bankrupt to turn over. If he did not deliver the goods or pay the money by the 17th of July, he was further ordered to show cause on that day why he should not be attached and committed for contempt until he did so. On the last-named day he filed what he called a petition for a rehearing. It would have been more accurately described as a request that the court should reconsider the conclusions to which upon the record it had come. The bankrupt did not say that he wished to offer any new testimony, nor did he in fact then or at any time offer any. He contented himself with saying that the referee, upon the testimony already in the case, had come to an erroneous conclusion. He asserted that at no time since he had been adjudicated a bankrupt had he been possessed of any property of any kind either in merchandise or money, and that he was absolutely penniless. He asked that his petition for rehearing should be treated and considered as an answer to the rule to show cause why he should not be committed for contempt.

On the 18th of July, after argument by counsel, the petition for

rehearing was denied. It was adjudged that as a response to the rule it did not show any sufficient cause why the order theretofore made should not be enforced. The court found as a matter of fact that the bankrupt had in his possession and control the goods described in the preceding order, that such goods lawfully belonged to the custody of the trustees, and that the bankrupt had present ability to comply with the order to turn them over to his trustees. He was thereupon committed to the custody of the marshal of the court to be by him held and confined in the city jail of Norfolk until he complied with the order to deliver the goods or their equivalent cash value as ascertained and declared by the court. The order of commitment further recited that as the bankrupt had expressed a desire to appeal to this court, or to seek from this court a revision of the order, he would be admitted to bail pending such appellate proceedings. The bankrupt thereupon both appealed and filed a petition for revision in matter of law.

[1] The trustees have moved to dismiss both the appeal and the petition to revise. At least one of these motions must be granted. Where an appeal may be taken, there is no right to seek revision by petition, nor does an appeal lie in any case in which the order below may be revised above upon petition. These remedies are mutually exclusive. In the Matter of the Petition of Loving, Trustee, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725; Adams v. Deckers Valley Lumber Co., 202 Fed. 48, decided by this court at this term.

[2] Quite clearly no appeal will lie in this case under the provisions of section 25a. Whatever else the order below may be claimed to be, it is not a judgment adjudging or refusing to adjudge a defendant a bankrupt, nor a judgment granting or denying a discharge, nor is it a judgment allowing or rejecting a debt or claim of $500 or over. It is not appealable under the provisions of section 24a unless it was passed in a controversy arising in bankruptcy proceedings as distinguished from a mere proceeding in bankruptcy. Tefft, Weller & Co. v. Munsuri, 222 U. S. 114, 32 Sup. Ct. 67, 56 L. Ed. 118. If the question determined by the order of the court below arose between the bankrupt and his creditors and was of an administrative character, it is not appealable under section 24a. In re Mueller, 135 Fed. 711, 68 C. C. A. 349, cited and affirmed by the Supreme Court. In the Matter of Loving, trustee, supra. It is a question between the bankrupt and his creditors. It is within the administrative and summary jurisdiction of the court. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

So far as our researches go, there have been at least 16 occasions upon which the propriety of an order committing or refusing to commit a bankrupt, or some one holding for the bankrupt, for contempt in failing to obey an order to turn over property to the trustee, has come before Circuit Courts of Appeal. In 13 of these cases the matter has been brought up by petition to revise. Two of these cases were in the First Circuit: In re Cole, 144 Fed. 392, 75 C. C. A. 330; Id., 163 Fed. 180, 90 C. C. A. 50, 23 L. R. A. (N. S.) 255; In re Goodrich, 184 Fed. 5, 106 C. C. A. 207. Three in the Second: In re

Schlesinger, 102 Fed. 117, 42 C. C. A. 207; In re D. Levy & Co., 142 Fed. 442, 73 C. C. A. 558; In re Stavrahn, 174 Fed. 330, 98 C. C. A. 202, 20 Ann. Cas. 888. Two in the Fifth: In re Purvine, 96 Fed. 192, 37 C. C. A. 446; Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254. Two in the Sixth: In re Nugent, 105 Fed. 581, 44 C. C. A. 620; Sinsheimer v. Simonson, 107 Fed. 898, 47 C. C. A. 51. Four in the Eighth: In re Rosser, 101 Fed. 562, 41 C. C. A. 497; In re Baum, 169 Fed. 410, 94 C. C. A. 632; In re Frank, 182 Fed. 794, 105 C. C. A. 226; In re Meier, 182 Fed. 799, 105 C. C. A. 231. On three occasions an appeal was taken. One of these was in the Third Circuit: American Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342; and two were in the Eighth: Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451; Schweer v. Brown, 130 Fed. 328, 64 C. C. A. 574. In no one of the three was there anything said as to the proper method of bringing such an order below to the attention of the appellate tribunal. In the case in the Third Circuit the referee and the court below had found that the bankrupt had not the present ability to turn over the fund in controversy. The Circuit Court of Appeals agreed with them. In that proceeding it made no practical difference to any one whether the appeal was dismissed or· the judgment below affirmed. In the Eighth Circuit both methods have been resorted to indifferently. Until the recent decisions of the Supreme Court, the rule in that circuit was that the two remedies were not exclusive of each other, but were concurrent and cumulative. In re McKenzie, 142 Fed. 383, 73 C. C. A. 483. The question as to when in contempt proceedings an appeal will lie, and when a petition for revision is the proper proceeding, has been discussed by the Circuit Court of Appeals of the Ninth Circuit. Morehouse v. Pacific Hardware & Steel Co., 177 Fed. 337, 100 C. C. A. 647. In that case certain persons had been enjoined by the court of bankruptcy from prosecuting a suit in a state court. They had violated the injunction. It was sought to have them punished for contempt in the bankruptcy court. They brought the matter to the Circuit Court of Appeals by a petition to revise. In dismissing it, the court said that the order complained of "was not made with a view to obtain possession of the property of the bankrupt or to enforce a prior order of the court, but it is a criminal proceeding to punish by fine or imprisonment those who have been guilty of violating an injunction of the court." The opinion had previously declared that "proceedings in bankruptcy" include, among other things, "orders requiring the bankrupt to surrender property of the estate in bankruptcy and orders requiring the bankrupt's voluntary assignee to surrender property of the estate." "These are questions which with a view to the prompt administration and distribution of the assets of the bankrupt the law permits to be summarily disposed of by revision."

We are therefore of opinion, as well upon reason as upon authority, that an order of the court of bankruptcy ordering the bankrupt to turn over to his trustees property of the estate and committing him to prison until he does so is an order made in a proceeding in bankruptcy and may be brought before the Circuit Court of Appeals by a

petition to superintend and revise in matter of law under section 24b. It follows that it may not be brought up by appeal under section 24a.

The appeal of the bankrupt in No. 1,132 must therefore be dismissed.

Upon consideration of the petition to superintend and revise in matter of law, we may not go into disputed questions of fact. Kenova Loan & Trust Co. v. Graham, 135 Fed. 717, 68 C. C. A. 355. In his petition the bankrupt says that the order of June 22, 1912, confirming the findings of the referee and directing him to turn over goods or cash to the amount therein stated, is erroneous, because there is no sufficient evidence to justify the finding of the referee or to justify the court in confirming the same, the opinion of the referee having been based upon erroneous, improper, and insufficient testimony, and having been arrived at really by a speculation and conjecture, and is not based upon any fact or facts. If upon a petition to revise we can consider such a specification at all, it must be upon the assumption that it is in effect a demurrer to evidence, and is equivalent to the assertion that there was no evidence at all before the referee and the court below from which a rational mind could have drawn the conclusion to which they both came.

[3] The evidence was that of the bankrupt himself, which is reproduced in the record in full, and of his books and papers which have not been brought up at all. The trustees undertook to show by the testimony of the bankrupt and from his books and invoices that at a particular time preceding his bankruptcy he had on hand goods of a certain aggregate value; that between that time and the adjudication in bankruptcy he had bought and actually received into his stores additional goods to a definite minimum value; that his sales during the same period had totalled a certain sum; and that such sales had been made at an average profit of so much per cent. If these facts could all be definitely ascertained, there would be little difficulty in determining the approximate value of the goods the bankrupt in ordinary course should have had at the time of his adjudication. For illustration: If he had $20,000 of goods on hand two months before his adjudication, had purchased $10,000 worth in the two months, if in that time his gross sales had totalled $12,500, and it was shown that his average gross profit was 25 per cent., the calculation would be easy.

| | | |
|---|---:|---:|
| On hand 2 months before adjudication.................... | | $20,000 |
| Purchased since....................................... | | 10,000 |
| | | $30,000 |
| Less good sold......................................... | $12,500 | |
| Deduct 25% profit..................................... | 2,500 | 10,000 |
| Goods which should be on hand........................ | | $20,000 |
| Now if the bankrupt actually turned over to his trustee goods of a cost value of only............................ | | 5,000 |
| There would be a discrepancy of...................... | | $15,000 |

In the case supposed there might well be a presumption either that the bankrupt still had a very large quantity of goods, or that, if he did

not have them, he had lost them in some way so out of the ordinary that he must have had knowledge of it. In practice the problem can very seldom be worked out with the ease and certainty of the above illustration. It is usually very difficult to find out what amount of goods were on hand at the time selected for the starting point of the calculation. Contemporaneous estimates, or even inventories of the bankrupt, cannot always be relied on. Perhaps it would be more accurate to say that in these cases they are usually unreliable. A bankrupt against whom proceedings of this kind are pressed is very likely to be either a careless and reckless person or else a tricky and morally unreliable one. If he is the latter, he may, of course, be capable of concealing goods or their proceeds from his creditors, but whether he be the former or the latter he is at least equally likely by negligence or design to have inflated his inventory or his estimate. If at the time he made it he was in need of money or credit, he would be strongly tempted to value his stock far beyond its real worth. Many men so situated cannot tell the exact truth even to themselves. They cannot face the fact that they are insolvent. If any considerable period of time elapses between the inventory and the adjudication, the difficulties of reaching an accurate result by the method under consideration increases in almost geometrical progression. When honest and solvent dealers take an inventory, they sometimes find that they have not on hand the goods which from their books and estimates they should have. For these and other reasons, which will readily occur to anyone of business experience, this method of determining what goods the bankrupt should have on hand at the time of his bankruptcy must be used with extreme caution. In some instances, however, it does yield results which closely approximate to the certainty of a mathematical demonstration. The use of it in cases of this kind, and for the purposes for which it has been here employed, has been approved by courts of the highest ability and of large experience in bankruptcy matters. In re D. Levy & Co., 142 Fed. 442, 73 C. C. A. 558 (C. C. A. 2d Circuit); Schweer v. Brown, 130 Fed. 328, 64 C. C. A. 574 (C. C. A. 8th Circuit); In re Baum, 169 Fed. 410, 94 C. C. A. 632 (C. C. A. 8th Circuit), are apparently cases of this kind. The District Court cases in which this way of determining that the bankrupt had concealed assets and the amount of such assets so concealed, are very numerous. Some of them appear to have been well considered. Upon the authorities and upon principle we cannot hold that a determination made by the referee and the judge below in that way is so totally unsupported by the evidence that they erred in matter of law.

The bankrupt says that there was error because the court below undertook to decree against him for certain goods without specifying or describing in any manner the same so as to enable him to know how or in what manner to comply with said order. The goods were described as such as he had carried in his stores, namely, dry goods, notions, and ladies' ready-made wear of the cost or wholesale price of $4,166.54. This was sufficiently definite.

The bankrupt claims that it was error for the court to give him the alternative of paying the trustee $3,000, which he says the court arbi-

trarily fixed as the value of the goods. It was stated at the argument at this bar that this permission had been given by the court below because it was understood that such was the wish of the bankrupt. Whether that was so or not, the bankrupt cannot complain of having the option. He need not avail himself of it, if he does not wish to do so. He can be in no way injured by being allowed to pay the money if he wants to.

[4] The bankrupt further says that there was absolutely no evidence before the referee or before the court below to show that he was able to comply with the decree or that he then had said goods in his possession or proceeds derived from the sale or disposal thereof. There was evidence which satisfied the referee and the court that at or shortly before his adjudication the goods or their value were in his possession. "The settled rule is that, when property of a bankrupt estate is traced to the possession of one who receives it upon the eve of the bankruptcy of its owner, it is presumed to remain in his possession or under his control until he satisfactorily accounts to the court of bankruptcy for its disposition or disappearance; that the burden is upon him to satisfactorily so account for it; and that he cannot escape an order for its surrender by simply denying under oath that he has it, or that it is the property of the bankrupt estate." In re Meier, 182 Fed. 799, 105 C. C. A. 231. That was a decision of the Circuit Court of Appeals of the Eighth Circuit in a case which the present Mr. Justice Van Devanter sat, together with Circuit Judge Sanborn and District Judge Reed. Many cases are cited in the opinion in support of this statement of the law and the number could be almost indefinitely augmented if there was occasion so to do.

The above are all the errors of law which are pointed out by the bankrupt as having been made in the order of June 22, 1912; that is, in the order of the court confirming the previous finding and order of the referee. He says, however, that it was error for the court in the face of his sworn denial that he was in possession of the goods or the money to adjudge him in contempt.

[5] This contention is sufficiently answered by the quotations we have already made from In re Meier, supra. The sole remaining error in law pointed out by the bankrupt's petition is that the court did not, after he filed his petition for rehearing and his answer to the rule to show cause, make a new and independent investigation of the fact of concealment of assets and of the bankrupt's present ability to comply with the order to turn such assets over to his trustees. Before such an order as that which was passed in this case can be lawfully made, a petition must be filed alleging that the bankrupt has assets of the estate in his possession or under his control, and praying that he be required to turn them over to his trustees. The petition should either describe or identify the assets, or so point out the source from which the petitioner claims they came, as to give the bankrupt fair notice of the charge against him so that he may be able to meet it. An order to show cause why the prayer of the petition should not be granted must then be served upon the bankrupt, and he be given what under all circumstances is a fair and reasonable time to answer.

In re Rosser, 101 Fed. 562, 41 C. C. A. 497; In re Frank, 182 Fed. 794, 105 C. C. A. 226.

All this was done in this case. After his answer has been put in, or after the time at which it should have been put in has expired, and upon reasonable notice to him, evidence in support of the allegations of the petition may be taken. One of the contentions pressed upon this court by the counsel for the bankrupt was that the testimony of the bankrupt taken at his examination at the creditors' meeting and before the filing of the petition of the trustees had been used against him. Had such evidence been that of any person other than himself, his objection might have been well taken. He would have been entitled to know that the issues made by the petition and his answer were to be litigated, and that the evidence of the witness was to be used in such litigation so that he could have cross-examined if he had been so advised. Obviously, however, there is no such reason for holding inadmissible what he himself swore, or for that matter said either before or after the filing of the trustees' petition. As an admission of a party to the cause it was receivable in evidence against him. The proceeding was not criminal within the prohibition of section 7a, cl. 9, of the act. The bankrupt's testimony at the meeting of creditors may be in it used against him. It was apparently expressly so decided in Re Cole, 163 Fed. 180, 90 C. C. A. 50, 23 L. R. A. (N. S.) 255. In all other cases of this character the admissibility of the bankrupt's testimony at his examination by the creditors has been assumed to be so manifest that it has so far as we know never been challenged.

After all the testimony offered by both sides has been received, the referee makes up his findings. If he is of opinion from the evidence that the allegations of the trustee's petition have been sustained in whole or in part, he so finds, and he thereupon orders the bankrupt by some certain date to turn over to his trustee the assets of the estate which he holds the bankrupt unlawfully retained and still has in his custody or under his control. The bankrupt may ask for a review of these findings and order, or he may not. If he does and the referee's order is confirmed, or if he does not, the same procedure in substance follows. Before he can be treated as in contempt, he must be notified to show cause why he should not be attached and committed for failing to comply with the order of the court. In re Cole, 144 Fed. 392, 75 C. C. A. 330; Id., 163 Fed. 180, 90 C. C. A. 50, 23 L. R. A. (N. S.) 255. If he shows cause, the court is bound to hear any new evidence he may offer. In re Goodrich, 184 Fed. 5, 106 C. C. A. 207. In this case the bankrupt offered none, and in the argument here expressly stated that he had none to offer. The question before the court below was therefore whether the evidence already in was sufficient to establish the facts necessary to justify a committal for contempt. Many of the cases say that an order that the bankrupt shall turn over property to his trustee may be passed upon less conclusive evidence than that which will be required to justify an order for committal for failure to comply with the order to turn over. The reason assigned is usually that the first is a civil and the latter a criminal proceeding. It is very doubtful whether this ex-

planation is well founded in law. Most, if not all, the cases in which it is made were decided before the Supreme Court in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, so elaborately discussed the distinctions between civil and criminal contempts.

It must be borne in mind that the form of the order in the case at bar was that the bankrupt should be imprisoned not for a definite term as a punishment, but until he complied with the order by turning over the property in question to his trustees. It is because the order is so worded that the court must be satisfied of the present ability of the bankrupt to comply with it. It is easy to conceive of cases in which a bankrupt had so dealt with his property after he had been ordered to turn it over as to make it impossible for him to do so. In such case no such order as that passed below could properly be made against him, but for all that he might well be subject to punishment for the contempt of which he had been guilty. That punishment would take the form of a fine of a definite amount or a committal to prison for a term of fixed duration. In the case of Gompers v. Bucks Stove & Range Co., supra, the Supreme Court said:

"The distinction between refusing to do an act commanded—remedied by imprisonment until the party performs the required act, and doing an act forbidden—punished by imprisonment for a definite term, is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

The court instanced the case of a refusal to turn property over to a receiver upon the order of a court as an illustration of a civil contempt. It said that:

"Unless there were special elements of contumacy, the refusal to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. * * * The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in Re Nevitt, 117 Fed. 461 [54 C. C. A. 635], 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do."

[6] If proceedings such as the one at bar were instituted to punish criminal contempts, the defendant could not be compelled to testify against himself, nor could his testimony at the creditors' meeting be used against him. It is the almost universal practice to examine the bankrupts in such cases. Whether if he refused to testify he could be compelled so to do is a question not before us and upon which we intimate no opinion. We simply refer to the ordinary practice as illustrating that the profession has not usually thought of these proceedings as essentially criminal in their nature. We have said this much in order to prevent misapprehension or confusion, nevertheless we thoroughly agree with those courts which hold that, before a bankrupt may be committed for failure to obey an order to turn over property to his trustee, the court should be satisfied that he has present ability to comply. For many reasons the conviction that he has the power should be as nearly absolute as human conclusions ordinarily

can be. We know no better way of stating the quantum of proof which should be insisted on than to say, as other courts have said, that it should be sufficient to establish the fact beyond reasonable doubt. Such a rule is required, not only for the protection of the liberty of the citizen, but for the preservation of the dignity of the court itself. It is not well that there should be many occasions in which, after sending a man to jail for refusing to obey an order, the court will feel constrained to release him without the order being obeyed. Unless the power of commitment as a means of compulsion is exercised only when there is no real question of the ability of the defendant to do what he is commanded, such an outcome will not be uncommon.

It therefore follows that, when the court is asked to commit, it should very carefully consider the case which has been made out. That does not require that the testimony which has been once taken in the proceeding should be again heard. To do so would be a useless waste of time. If new testimony is offered, the court must hear it. It will be well for the judge again to give thought to that which he has already considered in order that he may feel sure that no mistake is being made. There is nothing in the present record to suggest that the learned and experienced judge below did not do all this. We have gone so fully into this case because it is the first of this kind to come before us, and because we are profoundly impressed with the caution with which the power to commit in these cases should be exercised. Such proceedings are usually taken against bankrupts who in some or in many ways have acted badly. They frequently richly deserve some sort of punishment. Their manner on the witness stand sometimes adds to the indignation which their conduct in other respects excites. All these things may sometimes not unnaturally lead to their commitment for failure to do what after all they could not do if they would.

From what has already been said, it is apparent that we discover no error in matter of law in the action of the court below. The order in No. 1,122 will therefore be affirmed. In so doing, however, we will follow the wise precedent set by the Supreme Court in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, and will remand the case with liberty to the court below, if it shall think it expedient so to do, to take such further proceedings, if any, as it may be advised.

Affirmed.