## In re ORIEL et al.

Circuit Court of Appeals, Second Circuit.
January 9, 1928.

No. 72.

1. Bankruptcy ⊜467(4)—In reviewing contempt order in bankruptcy, court's findings have force and effect of jury's findings.

In application for review of contempt order in bankruptcy proceeding, findings of fact by trial court have force and effect of findings of fact by jury.

2. Bankruptcy ⊜467(5)—Findings of referee on conflicting evidence, affirmed by District Court, in bankruptcy proceeding, held conclusive.

Findings of referee on conflicting evidence, affirmed by District Court, in bankruptcy proceeding, discrediting excuse offered by bankrupts for failure to comply with order to turn over certain books to receiver, held conclusive on reviewing court.

3. Bankruptcy ⊜136(6)—Greater degree of proof than clear preponderance of evidence is not required in turnover proceeding.

In bankruptcy proceeding, greater degree of proof than clear preponderance of evidence is not required, even in proceedings necessarily involving intentional fraud, such as turnover proceeding.

4. Bankruptcy ⊜136(12)—Prima facie case for contempt is established by showing failure to comply with turnover order.

In bankruptcy proceeding, prima facie case for contempt is established by showing bankrupts' failure to comply with order to turn over to receiver certain books used in bankrupts' business.

5. Bankruptcy ⊜136(10)—Regularity, correctness, or validity of turnover order cannot be examined in contempt proceeding to punish for failure to comply therewith.

Regularity, correctness, or validity of order directing bankrupts to turn over certain books to receiver cannot be examined in proceeding to punish by contempt for refusal to comply, only inquiry being whether court had jurisdiction of subject-matter and parties, and whether order was violated, since, even if improvidently granted or irregularly obtained, it must be respected till annulled by proper authority.

**6. Bankruptcy ⬅️136(9)—Contempt proceeding for bankrupts' failure to comply with turnover order held to be civil contempt.**

Proceeding to punish bankrupt by contempt for failure to comply with order to turn over certain books to receiver *held* to be civil contempt.

**7. Bankruptcy ⬅️136(12)—In contempt proceeding against bankrupts for failure to turn over books as ordered, proof beyond reasonable doubt that they had books and willfully refused to turn them over held not required.**

In proceeding to punish bankrupts by contempt for failure to comply with order directing them to turn over certain books to receiver, proof beyond reasonable doubt that bankrupts had books and continued in their possession, and were willfully refusing to turn them over, *held* not necessary.

**8. Bankruptcy ⬅️136(9)—Commitment for contempt is proper, where person fails to obey order in bankruptcy, presumption being that he willfully disobeyed.**

Power to punish for contempt is exercised cautiously, and, when conclusion is reached that person directed to obey order in bankruptcy has not done so, presumption is that he has willfully disobeyed, and such is typical case for punishment resulting in commitment.

**9. Bankruptcy ⬅️136(12)—One disobeying turnover order is presumed to act willfully.**

Where person directed to obey turnover order in bankruptcy has not done so, presumption is that he has willfully disobeyed.

L. Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Harry Oriel and another, individually and as members of the firm of Oriel, Confino & Co., bankrupts. From an order adjudging the bankrupts in contempt of court for failure to obey an order directing them to turn over to the receiver certain books used in their business (17 F. [2d] 800), they appeal. Order affirmed.

Hartman & Levy, of New York City (Hugo Levy, of New York City, of counsel), for appellants.

Benjamin Siegel, of New York City, for respondent receiver and trustee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. On October 22, 1926, an order was entered directing the appellants to turn over to the receiver, within three days, the books of account used by the bankrupts during the year 1925. No appeal was taken from this order, and thereafter the present motion was made to punish them for contempt for failure to obey. An order has been entered below, "committing them to jail, to be confined and detained for their alleged contempt in failing to comply with the terms of the order." The books directed to be turned over were (a) customers' and creditors' ledger; (b) purchase book and journal; (c) cash book; and (d) time book. They were petitioned in bankruptcy in August, 1926. The order to turn over the books was granted October 22, 1926, and the order appealed from was entered March 8, 1927. The excuse offered for failure to comply with the order is that they have no ability to do so, as the books are not in their possession, and have not been in their possession since they moved from the premises occupied by them prior to the filing of the petition in bankruptcy. This, they say, was the last time they saw the books.

On this appeal it is argued that the court erroneously declined to inquire into the merits of the turnover order, or the weight of the excuse offered before the present order committing them for contempt was entered. The District Court held that the motion to punish for contempt was a civil proceeding—a part of the turnover proceeding—and that the only inquiry open to the court was whether or not the order to turn over the books had been complied with. It was held that the order directing the books to be turned over could not now be attacked upon this motion to punish for contempt, and that therefore the excuse of inability to comply with the order, which was considered when the turnover order was entered, could not be reconsidered on the present application. When the turnover order was made, the court discredited the excuse of inability to comply, because the books were either lost or mislaid, and therefore not in the possession of the appellants.

[1, 2] The findings of fact by the trial court have the force and effect of findings of fact by a jury, in an application such as this for a review of a contempt order. Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 S. Ct. 665, 48 L. Ed. 997; Davidson v. Wilson (C. C. A.) 286 F. 108; Binkley v. United States (C. C. A.) 288 F. 244. The findings of the referee below, affirmed by the District Court, discrediting the excuse offered here after having heard conflicting evidence, requires our accepting the conclusions reached. Matter of Kaplan Bros. (C. C. A.) 213 F. 753; Epstein v. Steinfeld (C. C. A.) 210 F. 236; Re Schulman (C. C. A.) 177 F. 191. This court said in Re Schulman, supra:

"Unless convinced that manifest error has been committed, this court should refrain from meddling with the administration of the

estate which can safely be intrusted to the officers of the bankruptcy court who are familiar with the local environment and the character and conduct of the parties. * * * An appellate court may be unable to detect, under such conditions, the false from the true, the honest from the fraudulent; but any intelligent person, after observing the witness for hours on the stand, could not be deceived as to his purpose."

The affidavit submitted in opposition to the motion resulting in the order appealed from merely states a willingness, and, indeed, a cheerfulness, to obey the order of the court, but an insistence that the order cannot be obeyed in producing the books, as it is impossible for the bankrupt so to do, and, based upon this, the appellants ask the court to consider the turnover proceedings de novo.

[3] It is urged that the question left open in Re J. H. Small Shoe Co., 16 F.(2d) 205, by this court, is presented here, and should be exercised in favor of the appellants' contentions. There this court referred to two courses open to a person sought to be held in contempt: First, obedience to the order or excuse therefrom by showing, with the burden of proof upon him, that he cannot fulfill it, and showing other lawful disposition of the property; and, second, another course depending upon the summation "that the measure of proof in contempt proceedings is criminal, i. e., beyond a reasonable doubt, a question on which we do not pass." We did not there deem it necessary to pass upon the measure of proof in contempt proceedings or whether they should be regarded as criminal proceedings. We said in Re Plaza Shoe Co., 15 F. (2d) 278, that such summary proceeding is civil and should be controlled by the usual rules in civil cases. In that case, which was a turnover proceeding, we held that the rule of proof was, as announced in Free v. Shapiro (C. C. A.) 5 F.(2d) 578, to be, that the burden of proving that the bankrupt had withheld assets must be established beyond a clear preponderance of evidence, and not beyond a reasonable doubt. No greater degree of proof is required in other proceedings even necessarily involving intentional fraud. No sound reason can be given for making an exception against creditors in a proceeding of this sort in a bankruptcy court, and, as said in Free v. Shapiro, supra, "to impose on creditors in a proceeding of this kind the exceptional burden of proof beyond reasonable doubt of the charge against the bankrupt of withholding assets would facilitate and encourage fraudulent bankruptcies, already so prevalent." A contempt proceeding contemplates the enforcement of the process and orders of court, a disobedience of which is referred to as a civil contempt. But acts which hinder the administration of justice, such as disturbing the proceedings of the court while it is sitting, or libeling a judge, or publishing comments on a pending case, are criminal contempts. A civil contempt is a wrong for which the law awards reparation to the injured party, though nominally a contempt of court. It is a matter of a wrong of a private nature and between private litigants. The punishment is a form of execution for enforcing the right of a suitor. In Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the Supreme Court said:

"* * * Imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless these were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial, and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in Re Nevitt [C. C. A.] 117 F. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment, by doing what he had previously refused to do."

[4] We held in Re Kahn (C. C. A.) 204 F. 581, and United States ex rel. Paleais v. Moore (C. C. A.) 294 F. 852, that the rule is applicable in civil causes arising in bankruptcy proceedings. The Supreme Court, in Michaelson v. United States, 266 U. S. 42, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451, pointed out that proceedings for criminal

contempt, unlike that for civil contempt, is between the public and the defendant. It is an independent proceeding at law, and no part of a criminal case. A prima facie case for contempt is established by showing that there is a failure to comply with the turnover order (In re Stavrahn [C. C. A.] 174 F. 330, 20 Ann. Cas. 888), for the merits of such an order, duly issued, required mandatory action in a civil case which was disobeyed, and leaves nothing open to review, except obedience to the order or conduct which might justify or excuse performance. Howat v. Kansas, 258 U. S. 181, 42 S. Ct. 277, 66 L. Ed. 550; Matter of Frankel (D. C.) 184 F. 539; Shulman v. United States (C. C. A.) 18 F.(2d) 579; Reardon v. Pensoneau (C. C. A.) 18 F.(2d) 244. We said, in United States ex rel. Paleais v. Moore, supra:

"If, at the time the turnover order was made, the books and papers were in the bankrupt's hands, the presumption is that they continued to be in his possession or under his control until he has satisfactorily accounted to the court of bankruptcy for their subsequent disposition or disappearance. The burden is upon him satisfactorily to so account for them. He cannot escape an order for their surrender by simply denying under oath that he no longer has them. This is in accordance with the rule that the proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference that it exists at a subsequent time."

[5-7] The regularity, correctness, or validity of the order disobeyed cannot be examined in this proceeding to punish. Even if it was improvidently granted or irregularly obtained, it must nevertheless be respected until it is annulled by the proper authority. Cape May R. R. Co. v. Johnson, 35 N. J. Eq. 422. The only inquiry is whether the court granting the injunction had jurisdiction of the subject-matter and of the parties, and whether the order has been violated. Therefore it was not incumbent upon the appellee in this proceeding, which we hold to be a civil contempt, to establish beyond a reasonable doubt that they had the books and continued in their possession, and are willfully refusing to turn them over. That was a matter for determination on the motion in the turnover proceeding. In that proceeding it was determined that the appellants were able to deliver up the books in question, and that they had them either in their possession or under their control. No appeal was taken from the order. They must be committed until they can satisfy the court that they should be purged of the contempt committed, either by compliance with the order or some remedial relief be accepted, or otherwise satisfy the court that their commitment should be lifted and they be released. Kirsner v. Taliaferro (C. C. A.) 202 F. 51.

[8, 9] The power to punish for contempt is exercised cautiously, and when a conclusion is reached, that the person directed to obey the order in bankruptcy has not done so, the presumption is that he has willfully disobeyed, and such is a typical case for punishment resulting in commitment.

The order below is affirmed.

L. HAND, Circuit Judge (dissenting). We held in Re Plaza Shoe Co. (C. C. A.) 15 F.(2d) 278, that the summary proceeding was civil, and required no more than a preponderance of proof. Both in that case and in Re Small Shoe Co. (C. C. A.) 16 F.(2d) 205, we reserved the question whether in the contempt proceeding the same rule applied. We did not decide that question in Re Levy, 142 F. 442; in Re Stavrahn, 174 F. 330, 20 Ann. Cas. 888; in Re Weber, 200 F. 404. It was at least said in Boyd v. Glucklich, 116 F. 131, 140, 142 (C. C. A. 8), and Kirsner v. Taliaferro, 202 F. 51, 60, 61 (C. C. A. 4), that the ability of the respondent to comply must appear beyond reasonable doubt, and In re Goodrich, 184 F. 5 (C. C. A. 1) so holds. The Eighth Circuit has more recently declared itself otherwise. Reardon v. Pensoneau, 18 F. (2d) 244.

To me it seems intolerable that a man should be coerced by an indefinite imprisonment to do what it is uncertain that he can do at all. I recognize that into all human affairs some doubts must enter; but, when the stake is liberty, we should make sure if we can. If my brothers are right, although the finding in the summary order may rest only upon probabilities, the bankrupt is precluded from attacking its validity, and he is sent to jail and kept there for as long as the judge sees fit. Yet, if he was charged with violating an injunction, the case would be otherwise. He is then subject only to prosecution for criminal contempt and his guilt must appear beyond doubt. Gompers v. Buck's Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. Of the two, the criminal sanction is less drastic, because at least the term must be fixed in advance.

The argument is that, upon proceedings to punish the violation of an order its validity is not open to dispute. Howat v. Kansas, 258 U. S. 181, 42 S. Ct. 277, 66 L. Ed. 550; U. S. v. Debs (C. C.) 64 F. 724. Except for

Drakeford v. Adams, 98 Ga. 722, 25 S. E. 833, Reardon v. Pensoneau, 18 F.(2d) 244 (C. C. A. 8), and my own early decision, In re Frankel (D. C.) 184 F. 539, all the cases I can find so holding did not involve the ability of the contemnor to comply. That appears to me a crucial distinction, and it was so held in Johnson v. Goldstein, 11 F.(2d) 702 (C. C. A. 6), though I am not clear that the case is strictly one of res judicata. In any event, we must not miss the forest for the trees; when exceptions are necessary, exceptions there should be.

The procedural difficulties of applying the criminal rule are in my judgment exaggerated, and I tried, in Re Small Shoe Co., to show how they might be avoided. Moreover, after considerable experience with such orders, I do not believe that they often result in much benefit to creditors. But with these considerations I am not primarily concerned; the issue is deeper. We are now to say that a man may be indefinitely kept in jail at the direction of a judge, who is not even certain that he should ever have been put there at all. To that I cannot agree.