# F. GAVILAN ET AL.

*v.*

# HERMINIO LUGO.

---

Ponce, Bankruptcy, No. 54.

Bankruptcy—Trustee.

    1. The trustee is not the agent of the bankrupt, but the representative of the court in the handling of the bankrupt's estate.

Bankruptcy—Property of the Bankrupt—Rule to Show Cause.

    2. Upon the appointment of the trustee, if not earlier, all the property of the bankrupt passes to him by act of law, and if the bankrupt or his agents withhold property from the trustee, the referee may issue an order to them to show cause, and a disregard of said order is punishable as a contempt by imprisonment.

Bankruptcy—Property of Bankrupt—Presumption of Law as to Possession.

    3. If the bankrupt is unable to turn over property to the trustee, there can be no imprisonment for contempt. The sworn answer of the bankrupt that he has not possession of the property is not conclusive, as the law presumes that possession once held continues until proved otherwise.

Bankruptcy—Court of Bankruptcy—Powers of Referee—Third Persons.

    4. The referee is the court of bankruptcy for many purposes and for all purposes connected with the collection of the assets of the estate. The referee has power to initiate proceedings, and the court to punish for contempt, but this power cannot be used against a third person who holds bona fide the title or possession of the property.

Bankruptcy—Petition for Review—Finding of Fact by Referee.

    5. Upon a petition for review, the court will accept the referee's findings of fact unless convinced that he was wrong.

Opinion filed January 10, 1917.

/ Gavilan v. Lugo.

*Mr. Hugh R. Francis* for petitioning creditors.

*Mr. R. V. Perez Marchand* for trustee.

HAMILTON, Judge, delivered the following opinion:

This cause comes before the court upon a petition for review, setting up that on the 27th of September Referee Lee made a certain order which, it is claimed, was erroneous on these several grounds,—that he had no jurisdiction; that there were no proper proceedings; that petitioners had no opportunity for a defense; that the proceeding should have been a plenary one, instead of a rule to show cause; that petitioners do not accept the jurisdiction of the court; and that the petitioners have not received from the bankrupt any payments as stated in the order.

The order itself recites the facts of the case, and to it is annexed the evidence. The record facts as recited are that Herminio Lugo was adjudicated an involuntary bankrupt on July 19, 1916, upon petition filed by F. Gavilan et al. on June 1, 1916; that on or about May 26, 1916, a suit had been brought by Giron y Bou and others, and attachment proceedings instituted in the municipal court of Ponce, under which they were made custodians or depositaries of the property attached by the marshal; that on August 8th was the first meeting of creditors, and Enrique del Valle was duly appointed trustee, and thereupon the referee directed that the property attached should be delivered to the trustee. The trustee investigated and reported that the attachment had been vacated by the payment by Antonio Lugo, attorney in fact and manager of the bankrupt's business, of the amounts claimed by the attaching creditors, and

that these attaching creditors had received the following amounts: Giron & Bou, $214; Bigas & Rodriguez, $120.97; Figueroa Hermanos & Company, $164. The referee investigated and had an extensive hearing at more than one sitting, and came to the conclusion that the payments were preferences contrary to § 60-a of the Bankruptcy Law, and he thereupon ordered that each of these firms refund to the estate of the bankrupt the amounts above mentioned, this to be done by payment to the trustee Enrique del Valle within ten days of service of a copy of his order. The order was served upon them, and it is from this order that they appeal or file this petition for review. This is an important question, and the Court has given to it some consideration and will now state its views.

(1) In the first place, as to bankruptcy proceedings the filing of the petition creates an entirely different situation as between the alleged bankrupt and his creditors. He ceases to be a man of business and from that time on he becomes, provided the adjudication follows, which it did in this case, a bankrupt, and the trustee is not his agent, but is the representative of the court in the handling of everything pertaining to his estate. It has been said that the filing of the petition amounts to a caveat, an attachment, and an injunction, of which all the world is bound to take notice. Mueller v. Nugent, 184 U. S. 1, 46 L. ed. 405, 22 Sup. Ct. Rep. 269.

(2) The very important question comes up in every case, of the administration of the assets which come into the hands or should come into the hands of the trustee. A question which continually comes up, and does in this case, and must be decided carefully, is this. Where it relates to property which is not surrendered to the trustee, this must be got in hand for the

Gavilan v. Lugo.

purposes of distribution. That is the object of the bankruptcy proceeding. And yet it must be got in hand by some orderly procedure, and the question continually comes up as to what that may be. It must not be overlooked that there is only one United States district court in the Island, one bankruptcy court, and it is utterly impossible to expect that court and that judge to handle personally, if he is to do it intelligently, all the bankruptcy business of a million and a quarter of people, and the law does not expect him to do it. A vast majority of the business is handled by the referees. They are four in number for Porto Rico, two in San Juan, one at Ponce, and one at Mayaguez, and it is very important that they be protected in the proper exercise of their jurisdiction. It is also important that all constitutional rights of the people be respected, and for that purpose the business men of Porto Rico are just as much entitled to the personal guaranties of the Constitution as are citizens of New York or of Alabama. There is no difference under the Constitution when it comes to matters of that kind. So that the court, in reviewing any action of the referee, must do it with those two things in mind,—the interest of the public and the rights of the individual. Now, there is no question on one point. That is, where property of the bankrupt is withheld by the bankrupt himself, a summary proceeding can be had under the Bankruptcy Law, against the bankrupt. In order to become a bankrupt, whether voluntary or involuntary, he must himself turn over everything that he has that is properly subject to his debts. The next step is equally clear, that is to say, that where someone else is merely the agent of the bankrupt and has possession of property which belongs to the bankrupt, and does not belong to this individual himself, he must turn

over the property; and in each case, whether it be the bankrupt or whether it be the agent, this may be compelled by a summary process, by a rule to show cause or any summary process, and that this may be issued by the referee without intervention in any shape of the district court or the district judge as such. It is true everything the referee does can afterwards be brought before the judge sitting in court, by a petition of review, but in the first instance the responsibility is entirely upon the referee, and he may, by a rule to show cause, the result of which would be contempt if not complied with, compel the bankrupt or his agent to return any property which belongs to the estate. That is very fully considered in the case just mentioned of Mueller v. Nugent, where the court discusses it at length in all its bearings. That was a case where one Nugent, an old man, turned over a good deal of property to his son, another Nugent, just two or three hours before the bankruptcy proceeding, and the son then undertook a long journey throughout the West, finally returning, however, to, I think it was, St. Louis, within the jurisdiction of the bankruptcy court. The referee even after the lapse of a year issued a rule upon him to refund some $14,000 which he had so received. This brought up a number of questions, which were discussed upon the petition for review in the district court and afterwards in the circuit court of appeals, and finally in the Supreme Court of the United States, with the result that from that time on there can be no question as to the powers of the referee. The theory of the proceeding is this. That upon the appointment of the trustee, if not earlier, the title to all property which, up to that time, was the property of the bankrupt ceases to belong to the bankrupt and passes by act of law to the trustee, and is practically in custodia legis.

Gavilan v. Lugo.

If, therefore, the bankrupt withholds property, or if his agent withholds property, any proceeding against them to pay it over is not a proceeding on a debt or any other ordinary legal process, but it is a procedure to make them turn over to the court what belongs to the court; and if they do not do it it is a contempt, just like any other interference with the rights of the court would be a contempt. For that reason there may be a proceeding to show cause, and if found against the party it becomes a contempt and may be punished by imprisonment, and it therefore would not be an imprisonment for debt or anything of that kind. This phase of it is discussed at some length in Schweer v. Brown, 64 C. C. A. 574, 130 Fed. 328. That is the theory of the contempt proceeding, and this rule to show cause can be issued, and should be issued and carried clear through by the referee except as to punishment.

(3) The third point, however, would be this, that there can be no imprisonment for contempt if the defendant is unable to turn over the property. Even if he has spent it, and has not the property or its equivalent in his possession, it is a physical impossibility for him to restore it. There might be some punishment inflicted upon him for what he did, but it would not be imprisonment as a means of enforcing the order to turn over the property. This has come up a number of times. Re Marks, 176 Fed. 1018; Re Richards, 183 Fed. 501; Boyd v. Glucklich, 53 C. C. A. 451, 116 Fed. 131. There is this to be remembered, however, that a mere answer by the bankrupt or his agent that he has not possession is not conclusive. That does not prove at all that he has not possession. It is very little more than pleading. His oath is not conclusive any more than the statement of any other witness would be conclusive. That is decided in the

case I have just cited, Boyd v. Glucklich, supra. It is very forcibly stated there that the bankrupt's addition of perjury to retention of property belonging to the court does not help him. It does not purge the contempt. (53 C. C. A. 462.) Another apt expression is that if the bankrupt is examined, or other parties are examined, and they state that they do not remember, that does not help out in any way. Re Schulman, 167 Fed. 238. It is very aptly said that the expressions, I don't remember or I have forgotten, or others of that sort, are the mark of a prevaricator, and not of a truthful witness. The presumption of law, and it is a presumption of physics just as much as a presumption of law, is that possession once held continues until it is proved otherwise. Re Marks, 176 Fed. 1018; Boyd v. Glucklich, 53 C. C. A. 462, 116 Fed. 131. That is to say when property is traced into the possession of the defendant, it is presumed to stay there until it is proved to the satisfaction of the court that it leaves his possession. If a party has possession at the time of the bankruptcy or any other time that becomes important in the bankruptcy proceedings, that possession will be presumed to continue until it is proved otherwise, and there may be added to that that, if possession ceases after the bankruptcy or after the time when the bankruptcy proceedings are instituted, the presumption fairly attaches that the party must make good what he has disposed of.

(4) In the fourth place, this must be carefully remembered by all courts. The referee is the court of bankruptcy for many purposes, and for all purposes connected with the collection of the assets of the estate. Mueller v. Nugent, 184 U. S. 1, 46 L. ed. 405, 22 Sup. Ct. Rep. 269. And while he has the power to initiate proceedings for contempt, or while the court has pow-

Gavilan v. Lugo.

er to punish for contempt upon the recommendation of the referee, it is simply the power which is given at common law. There is no special power given by statute to the bankruptcy court to punish for contempt which is not possessed by district courts in other capacities than that of a bankruptcy court. That is the case of Re Boyd, 53 C. C. A. 451, 116 Fed. 131. So that a court must be careful how it proceeds under its right to punish for contempt. It is perfectly true, as seen above, that the bankrupt or his agent cannot retain possession of property which belongs to the estate, and that delivery by them can be compelled by a process of contempt. The other side, however, is equally true, that this procedure in contempt, this rule to show cause by the referee, cannot be used where there is a bona fide claim by a third party to the title or possession of the property. What would run against the bankrupt would not run against a bona fide purchaser for value,—not using this in a technical but in a general sense,—what is known in the Porto Rican law as a third person. The line between the two is often hard to discriminate; and in the case at bar these different parties claim to have received the property as third parties, that is to say, for full consideration, before there was any lien or any claim under the bankruptcy proceedings. And if that was so, the court of bankruptcy would be unable to proceed summarily, and it would have to proceed in another way. That was what passed on in the Velez Case, ante, 315, and that decision is not to be construed as going any further. That is, as to method of procedure, and not as to the right to proceed. Attention is called in the leading case of Mueller v. Nugent to a certain phase of this which ought to receive consideration. A person does not become an adverse claimant, a

third party, to use a local expression, simply by refusing to surrender property. Something sounding like that was said by the Supreme Court of the United States in Bardes v. First Nat. Bank, 178 U. S. 524, 44 L. ed. 1175, 20 Sup. Ct. Rep. 1000; but this expression was an inadvertence and the Bardes Case was modified by Bryan v. Bernheimer, 181 U. S. 188, 45 L. ed. 814, 21 Sup. Ct. Rep. 557. Attention is called in the Mueller v. Nugent Case to the fact that the referee is not shut off from procedure simply by the claim of the possessor of property in question that he bought it or that he has it by any good title. That is an instance of what is mentioned above, that the statement of a party in interest is merely pleading, is not conclusive. So, the upshot of the whole discussion is that, under the case of Mueller v. Nugent, the referee is not shorn of his power to proceed. If a party claims it as his, the referee can, and must, go ahead under the process which in this case was instituted, and determine whether the claim is bona fide or whether it is simply a subterfuge. If the defendant is holding the property under collusion with the bankrupt or anybody representing the bankrupt, or if he has disposed of it in collusion with the bankrupt or the bankrupt's agent, he is, for the purpose of the law and so far as concerns that property or its value, simply the bankrupt himself; and the referee in such case, if he finds that to be the case, must proceed and collect the money under the proceedings which he has instituted. He must investigate, in other words, and find out. This principle is on page 15 of the case of Mueller v. Nugent.

Such are the principles governing the case, and I have gone into them at some length because it has to be done at some time, and this is a convenient opportunity. What is the conclusion

on the facts in the case at bar? The claim of these petitioners for review is that they attached the property of the man who became afterwards a bankrupt, and that his attorney in fact made some arrangement by which another person assumed the debts and received the property. Now that is the claim. If that were shown satisfactorily, it might present a case of a third party, and the summary proceeding would not be appropriate. There would have to be a plenary proceeding. But as pointed out in the Mueller-Nugent Case this is not at all to be presumed conclusive. There will probably never be a case of a man wanting to hide property belonging to a bankrupt who will not say that he holds it as a third party, as a purchaser, holds it in his own right. And if the trustee has to go out and sue in local courts for a $10 bit of dry goods or a $15 lot of hardware, the expenses of bankruptcy proceedings will be such that there will pretty soon be no bankruptcy proceedings, and the law will simply come to an end because of the expense. The object of the Bankruptcy Law is exactly the opposite. It is to secure an honest division, among the proper parties, of the property of the bankrupt, and then to release the bankrupt. It is of general importance and must be so construed as to effect its purposes.

(5) And then there is another consideration for this court, and the controlling one. The referee carefully investigated what he deemed to be a suspicious case. He found upon examination and having the parties before him, and the evidence is in the record, that they did not recollect very much about it. They could tell very little. They did not know the amounts that were due them. That the bankrupt's agent, who had managed all of this, disappeared, left Porto Rico, and went over to Santo Domingo, when he had been expressly commanded by the

IX. Porto Rico.—23.

court to remain here. That is the subject of a separate proceeding, but may be referred to here. The conclusion which the referee drew from the whole case was that these petitioners were not bona fide purchasers, but were in the eye of law helping the bankrupt himself, and that they were doing this in order to get paid themselves. That the whole thing amounted to a kind of conspiracy, not necessarily criminal, because, no doubt, they were simply trying, as business men will try, to get their own debts, but nevertheless illegally because it took the bankrupt's property and paid off a few creditors and left the others to wonder at the inefficacy of the Bankruptcy Law. They must not be left in that condition. The referee had the parties before him. He could tell from their manner much better than the court what was the truth of the case, and the court in this instance, as in all others, is not going to disturb the finding of the referee unless convinced by the record and the evidence that he was wrong. I cannot say that I think he was wrong. The impression derived from the whole case is just the contrary. So, upon both principles of sustaining the referee unless he appears to be wrong and upon carrying out the law which seems to be involved in the facts as certified upon, the referee will be sustained, and the petition to review is denied at the costs of the petitioners.

It is so ordered.